**Todd MURPHY, and Roseann Murphy, Plaintiffs,**

v.

**HOUSING AUTHORITY AND URBAN REDEVELOPMENT AGENCY OF THE CITY OF ATLANTIC CITY, a New Jersey municipal corporation; John Glowacki; John J. McAvaddy, Jr., John P. Whittington, and John Does 1 through 15, Defendants.**

No. CIV.A.97–1558.

United States District Court,
D. New Jersey.

Aug. 27, 2001.

Clifford L. Van Syoc, Van Syoc Law Offices, Chartered, Cherry Hill, NJ, for Plaintiffs, Todd Murphy and Roseann Murphy.

Charles A. Ercole, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Cherry Hill, NJ, for Defendants, Housing Authori-

ty and Urban Redevelopment Agency of the City of Atlantic City, John Glowacki, John J. McAvaddy, Jr., and John P. Whittington.

## OPINION

ORLOFSKY, District Judge.

## I. INTRODUCTION

Once again, this Court is confronted with the spectacle of an attorney who has callously disregarded his professional obligations to this Court, his adversary, and his clients. In this case, Plaintiffs' counsel, Clifford L. Van Syoc, Esquire, has in bad faith turned a blind eye to the facts and law and has unreasonably and vexatiously multiplied the proceedings in this case. The record reveals that Mr. Van Syoc continued to pursue this lawsuit even when it became clear that there was no basis in law or fact upon which his clients could prevail. While the Rules of Professional Conduct impose a duty upon attorneys to represent their clients' interests zealously, Mr. Van Syoc's zeal in this case had more to do with the recovery of his counsel fees than the merits of his clients' claims. While Rambo may be a success at the box office, lawyers who appear in this Court and adopt Rambo as a role model do so at their peril. For the reasons set forth below, pursuant to 28 U.S.C. § 1927, I shall assess counsel fees of $56,885 and costs of $2330.60 against Mr. Van Syoc personally. Mr. Van Syoc shall make payment to the Defendants within thirty days of the date of this Opinion.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Todd Murphy ("Murphy"), filed a Complaint in this Court on March 27, 1997, alleging that he was the victim of "reverse discrimination" on the basis of his race and sex, by his employer, the Housing

Authority and Urban Redevelopment Agency of the City of Atlantic City ("the Authority") and several of its employees (collectively, "Defendants"). Subsequently, on December 31, 1997, Murphy amended his complaint to allege the following: (1) Count I, unlawful reverse employment discrimination based on race and sex; (2) Count II, unlawful reverse employment discrimination in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5–1 *et seq.;* (3) Count III, a *per quod* cause of action by Roseann Murphy, his spouse, for loss of companionship, society, comfort, care, service and consortium; and (4) Count IV, unlawful reverse employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See* Amended Complaint (filed Dec. 31, 1997).

On August 17, 1998, Defendants moved for summary judgment, contending that Plaintiffs had failed to establish a prima facie case of reverse employment discrimination, and that *per quod* damages are not recoverable in employment discrimination cases. Plaintiffs opposed the motion, contending that genuine issues of material fact precluded the granting of summary judgment.

On January 27, 1999, this Court filed an Opinion and Order granting Defendants' motion for summary judgment on all counts of the Amended Complaint, holding as follows:

> I shall grant the Defendants' motion for summary judgment on Counts I, II and IV of the Amended Complaint because Murphy cannot establish a prima facie case of unlawful reverse employment discrimination in violation of Title VII or the New Jersey Law Against Discrimination ("NJLAD"), and, alternatively, *because Murphy has failed to produce even a scintilla of evidence tending to show that the Defendants' proffered non-discriminatory reasons for the adverse employment decisions were merely a pretext for invidious discrimination.* In addition, I shall grant the Defendants' motion for summary judgment on Count III of the Amended Complaint, because *per quod* claims are not cognizable in cases involving claims of employment discrimination in violation of Title VII and the NJLAD, and because as a derivative claim, a *per quod* claim cannot survive if the underlying claim fails.

*Murphy v. Housing Authority and Urban Redevelopment Agency of the City of Atlantic City,* 32 F.Supp.2d 753, 755 (D.N.J. 1999) (Orlofsky, J.) (emphasis added).

On February 10, 1999, Defendants filed an application for counsel fees and associated expenses. *See* Defs.' Application for Counsel Fees, Case No. 97–1558 (Docket Entry No. 31). On February 26, 1999, Plaintiffs filed a Notice of Appeal of this Court's decision of January 27, 1999. *See* Notice of Appeal, Case No. 97–1558 (Docket Entry No. 32). On January 31, 2000, in an unpublished opinion, a three-judge panel of the United States Court of Appeals for the Third Circuit affirmed this Court's decision granting summary judgment to Defendants on all counts of Plaintiff's complaint. *See Murphy v. Housing Authority and Urban Redevelopment Agency of the City of Atlantic City,* 208 F.3d 206 (3d Cir.2000).

By letter dated February 1, 2000, this Court invited counsel for both parties to file supplemental briefs on Defendants' pending Application for Counsel Fees and Associated Expenses in light of the Third Circuit's Opinion. Both parties responded by filing Supplemental Memoranda with the Court on February 14, 2000. On February 13, 2001, Defendants filed a Second Supplemental Application for Attorneys' Fees and Related Expenses, requesting attorneys' fees and associated expenses

"relating to the defense of Plaintiffs' frivolous appeal" to the Third Circuit. *See* Defs.' Second Suppl. App. at 1–2.

On February 16, 2001, this Court heard oral argument on Defendants' Applications for Attorneys' Fees. The Court reserved decision on Defendants' Applications and requested a supplemental brief from counsel for the Plaintiffs, Clifford L. Van Syoc, Esq., on the question of whether Defendants' attorneys' fees should be assessed against Mr. Van Syoc personally pursuant to 28 U.S.C. § 1927. This Opinion addresses not only the issues raised by Defendants' original Application for Attorneys' Fees and Related Expenses, filed February 10, 1999, but also the arguments raised in Defendants' Supplemental Application, filed February 14, 2000, and Defendants' Second Supplemental Application, filed February 13, 2001.

## III. DEFENDANTS' APPLICATION AND SUPPLEMENTAL APPLICATIONS FOR COUNSEL FEES AND RELATED EXPENSES

 Pursuant to the so-called "American Rule" for payment of attorneys' fees, the "prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Brytus v. Spang & Co.*, 203 F.3d 238, 241 (3d Cir.2000) (citing *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). There are several statutory exceptions to this rule, two of which are relevant to the Applications now before this Court. They are: (1) 42 U.S.C. § 1988, which allows the prevailing party in civil rights litigation to recover counsel fees; and (2) 28 U.S.C. § 1927, which provides that any attorney who vexatiously and unreasonably multiplies the proceedings in any case may be required by the court to satisfy the excess costs incurred because of such conduct personally.

### A. 42 U.S.C. § 1988

 This statute authorizes the court to award attorneys' fees to a prevailing party in a civil rights action brought pursuant to federal civil rights statutes.[1] The purpose of this provision is "to ensure effective access to the judicial process for persons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." *Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998). This provision, however, applies to a prevailing defendant as well as a prevailing plaintiff. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)(holding that prevailing defendant in Title VII action may be entitled to attorneys' fees if "plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith"); *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163

---

1. Section 1988 provides, in relevant part, as follows:

 (b) Attorney's fees
 In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. §§ 1681 *et seq.*], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. §§ 2000bb *et seq.*], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. §§ 2000cc *et seq.*], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000d *et*

 *seq.*], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.
 42 U.S.C. § 1988(b).

(1980) (applying same standard in application by prevailing defendant in § 1983 claim for attorneys' fees).

■ The Third Circuit has held, however, as have most other Circuits which have considered the question, that " § 1988 does not authorize the award of attorneys' fees against plaintiff's attorney." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir.1990); *see also Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1374 n. 1 (6th Cir.1987); *Hamer v. County of Lake*, 819 F.2d 1362 (7th Cir.1987) (remanded to allow district court to consider other theories of liability); *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986) (dictum), *cert. denied sub nom., Suffolk County v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 915 (11th Cir.1982) (while reversing district court's failure to assess fees against counsel under court's inherent power, court observed that district court correctly determined that 42 U.S.C. §§ 2000e–5(k) of Title VII of the Civil Rights Act of 1964 did not authorize fees against counsel).

■ Based on my review of the record before me, it is clear that the driving force in this litigation was not the Plaintiffs, but Plaintiffs' counsel, Clifford L. Van Syoc. I reach this conclusion based on Mr. Van Syoc's conduct during discovery and settlement negotiations. For example, at the initial scheduling conference in this case, held before Magistrate Judge Kugler on July 30, 1997, counsel for Plaintiffs demanded $650,000 to settle the case, based largely on plaintiffs' alleged right to recover punitive damages and attorneys' fees. *See* Defs.' App. at Exh. B (Affidavit of Charles A. Ercole, Esq.), ¶ 8. In a letter dated March 12, 1998, Mr. Van Syoc wrote to counsel for Defendants, Charles A. Ercole, Esq.:

I recently had the pleasure of discussing with Mr. Ercole his request for a revised settlement demand, which I assume means one less than the $650,000 previously expressed. Given the fact that in the last two employment cases this office was involved in which were tried to a conclusion, our counsel fees alone were approximately $450,000 and $550,000, respectively, we believe that our initial demand is more than reasonable.

Defs.' App. at Exh. D (Letter, Clifford L. Van Syoc to Charles A. Ercole, Esq., dated March 12, 1998). By letter dated April 28, 1998, Mr. Ercole informed Mr. Van Syoc that Defendants rejected the settlement demand based on their belief that Mr. Murphy's claim was without merit. Defs.' App. at Exh. F (Letter, Charles A. Ercole, Esq. to Clifford L. Van Syoc, Esq., dated April 23, 1998). Mr. Ercole advised Mr. Van Syoc that defendants would forgo their right to recover attorneys' fees under § 1988 if Mr. Murphy would voluntarily dismiss his claim within 10 days, but noted that otherwise, "if you and Mr. Murphy continue to pursue this baseless action ... defendants will seek every redress available under the law." *Id.*

Evidently unimpressed by Defendants' offer, Mr. Van Syoc, by letter dated May 5, 1998, responded to Mr. Ercole as follows:

All posturing aside, it is crystal clear that plaintiff's claim has substantial merit, and your baseless threats are of no moment whatsoever ... How you leapt to the conclusion that our demand is indicative of a lack of merit in Mr. Murphy's claim escapes us, and we are quite confident it will escape the court. In sum, if your clients wish to settle this case and avoid what will be a torrent of litigation by other disgruntled employees, feel free to respond, appropriately, to our demand by making a counteroffer.

Defs.' App. at Exh. I (Letter, Clifford L. Van Syoc, Esq. to Charles A. Ercole, Esq., dated May 5, 1998).

Continuing in this vein, by letter dated July 6, 1998, Mr. Van Syoc advised Mr. Ercole that "it is our belief that this case can be resolved for a reasonable figure, although it *cannot* be resolved in the five figures, since Mr. Murphy's counsel fees already exceed that number[.]" Defs.' App. at Exh. C (Letter, Clifford L. Van Syoc to Charles A. Ercole, Esq., dated July 6, 1998). Finally, by letter dated August 24, 1998, Mr. Van Syoc informed Mr. Ercole that "I will be back from my vacation in Vermont on August 31, 1998, and am hopeful that you will be in a position to advise me as to whether there is a prospect for this case to be settled in a fair settlement range, which will be well into the six figures." Defs.' App. at Exh. D (Letter, Clifford L. Van Syoc, Esq. to Charles A. Ercole, Esq., dated August 24, 1998).

From the tenor of this correspondence, I conclude that Mr. Van Syoc's primary and possibly only interest in pursuing this litigation was in obtaining his attorneys' fees, as opposed to reaching an equitable result for his client. The "posturing" reflected in Mr. Van Syoc's correspondence had no basis in fact or law. This being the case, it would be manifestly unfair to burden Mr. Van Syoc's clients with the fees Defendants incurred as a result of Mr. Van Syoc's continued refusal to consider a reasonable settlement offer. I base my conclusion that Mr. Van Syoc's settlement demands were unreasonable on the fact that not only this Court, but also the Court of Appeals, found that Murphy's claims were not supported by even a "scintilla" of evidence. *Murphy*, 32 F.Supp.2d at 756; *Murphy*, 208 F.3d 206 (3d Cir.2000). Indeed, Mr. Murphy testified that: "I provided the facts pertaining to my claim to

my attorney, Clifford L. Van Syoc, Esquire, and *relied in good faith upon his legal advice as to whether those facts amounted to a valid claim.*" Murphy Cert. at ¶ 2 (emphasis added). Mr. Murphy should not be penalized for his reliance on the advice of an attorney who was more interested in his own attorneys' fees than in the merits of his clients' case. Because fees awarded under § 1988 may only be assessed against the losing party, as opposed to his attorney, this Court declines to award Defendants' attorneys' fees under 42 U.S.C. § 1988.

### B. 28 U.S.C. § 1927

#### 1. Governing Standards of Law

While 42 U.S.C. § 1988 has been construed to cover only attorneys' fees assessed against a losing party, 28 U.S.C. § 1927 contains a provision which allows the court to award counsel fees against an attorney. This section provides, in relevant part as follows:

§ 1927. Counsel's Liability for Excessive Costs

Any attorney or other person admitted to conduct cases in any court or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. This section is not limited by, but exists in addition, to other sanctioning regimes such as Rule 11. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

The Third Circuit has held that due process requires that "[p]rior to sanctioning an attorney, a court must provide the

party to be sanctioned with notice of and some opportunity to respond to the charges." *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir.1990) (citing, *inter alia, Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227–28 (7th Cir.1984) (§ 1927 case stating the "court should provide counsel with some opportunity to be heard")); *see also Anjelino v. New York Times Co.*, 200 F.3d 73, 100 (3d Cir.1999).

■ As noted previously, this Court heard oral argument on Defendants' Application for Counsel Fees on February 16, 2001. *See* Minute Entry, Civ. No. 97–1558, February 16, 2001 (Docket Entry No. 50). At oral argument, the Court raised the question of the imposition of attorneys' fees under 28 U.S.C. § 1927 against Mr. Van Syoc personally with counsel for both parties, and instructed Mr. Van Syoc to file a supplemental brief on the question of whether the Court should award Defendants' attorneys' fees pursuant to 28 U.S.C. § 1927 against Mr. Van Syoc. Mr. Van Syoc filed a supplemental letter brief addressing this issue with the Court on March 2, 2001. Accordingly, Mr. Van Syoc has undisputedly had adequate notice and an opportunity to be heard on the Court's consideration of the imposition of attorneys' fees under 28 U.S.C. § 1927. *See Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 570 (3d Cir. 1985).

■ The Third Circuit has held that "a bad faith finding is required as a precondition to the imposition of attorneys' fees under section 1927." *Baker Industries, Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir.1985); *see also Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991) (bad faith is a "prerequisite" under 28 U.S.C. § 1927). Before assessing attorneys' fees under § 1927, a District Court should find that the attorney to be so sanctioned acted willfully, and identify the conduct which constituted bad faith. *Baker Industries*, 764 F.2d at 209. "This bad faith requirement is seen as necessary to avoid chilling an attorney's legitimate ethical obligation to represent his client zealously[.]" *Id.* at 208.

■ "Bad faith" in the context of 28 U.S.C. § 1927 may be shown through "the intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986); *see also Hicks v. Arthur*, 891 F.Supp. 213, 215 (E.D.Pa.1995) (holding that "[bad faith] can be demonstrated either by showing an ulterior motive, or misconduct such as knowingly using perjured testimony, citing as binding authority overruled or non-binding cases, or otherwise misrepresenting facts or law to the court.") Furthermore, "[w]hen a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied." *Loftus v. Southeastern Pennsylvania Tranp. Auth.*, 8 F.Supp.2d 458, 461 (E.D.Pa.1998), *aff'd*, 187 F.3d 626 (3rd Cir. 1999), *cert. denied*, 528 U.S. 1047, 120 S.Ct. 581, 145 L.Ed.2d 483

■ Applying these standards to Mr. Van Syoc's conduct during the course of this lawsuit, I conclude that he acted in bad faith by "multipl[ying] the proceedings in [this] case unreasonably and vexatiously." 28 U.S.C. § 1927. I base this conclusion on the following considerations: (1) Mr. Van Syoc's pursuit of baseless claims, the frivolous nature of which he should have been aware by, at the latest, the Defendants' filing of their motion for summary judgment on August 17, 1998; and (2) Mr. Van Syoc's assertion of Roseann Murphy's *per quod* claim under the New Jersey Law Against Discrimination,

N.J.S.A. § 10.5–1 *et seq.*, and Title VII, 42 U.S.C. § 2000e *et seq.*, when both federal and New Jersey state courts had already held that *per quod* claims were not cognizable under either of those sources of law.

### 2. Van Syoc's Pursuit of Frivolous Litigation on Baseless Claims

To appreciate fully the nature of Mr. Van Syoc's conduct in pursuing this frivolous litigation, it is necessary to review the claims which he asserted on behalf of Mr. Murphy and the evidence, or rather, the shocking absence of evidence, which was offered in support of Mr. Murphy's claims. To do so, I shall return to my opinion granting Defendants' motion for summary judgment in this case, *Murphy v. Housing Authority and Urban Redevelopment Agency of the City of Atlantic City*, 32 F.Supp.2d 753 (D.N.J.1999).

Murphy alleged that he was the victim of "reverse discrimination" on the basis of his race and sex, in violation of Title VII and the NJLAD. As I explained at length in my earlier opinion, Murphy based his allegations on claims that: (1) he was denied a promotion and salary increase which he requested and to which he felt he was entitled; and (2) his supervisors refused to send him to a course at his employer's expense.

In evaluating Murphy's claim that he was denied promotion(s) and salary increase(s), based on "reverse discrimination," this Court reviewed Murphy's salary history. Murphy began his employment with the Authority in the position of Accounting Assistant on February 13, 1991, with an annual starting salary of $ 16,040. *Murphy,* 32 F.Supp.2d at 756. In April, 1991, Murphy received a 5% pay raise. *Id.* In November, 1991, Murphy received a $1000 raise. *Id.* at 756–757. In · early 1992, Murphy was promoted to Full-time Accountant, and received a 10% raise. *Id.*

at 757. Murphy's raise was in keeping with the Authority's promotion policy, which provided that all promoted employees would receive a raise of 10% of their present salary, or a raise bringing the promoted employee's salary to the entry level salary of the new position. *Id.* Murphy received an additional 5% raise in April, 1992; a $2,200 raise in December 1992 for taking on additional responsibilities; and an annual raise of 5.9% in April 1993. *Id.* In April, 1994, Murphy was promoted to Senior Accountant and received a 10% raise. *Id.* In April 1994, Murphy received a 5% annual raise. *Id.*

On September 1, 1995, Murphy sent a memorandum to the Executive Director of the Authority, requesting a promotion to the position of Supervising Accountant. *Id.* At the time he requested this promotion, Murphy was making $30,823.48 per annum; with the standard 10% salary increase associated with the promotion, Murphy would have made $ 33,905.76 per annum. Murphy, however, requested an exception to the Authority's standard 10% increase, and asked for a raise in excess of $19,550, which, if granted, would have brought his salary to $50, 375. *Id.* The requested raise would also have placed Murphy at a salary level above his immediate supervisor, the Authority's Comptroller, Robert Lawless, who received an annual salary of $40,180. *Id.*

The Authority's Board of Commissioners considered Murphy's request at a Board Meeting held on September 28, 1995. At the meeting, John Glowacki, the Authority's Director of Administration, made the following comments regarding Murphy's request:

> There is no question about this man's competence, or ability, or interest. He's one of the best employees I have. The problem is that there's—he's asking for additional money beyond what the per-

sonnel policy permits. [The][p]ersonnel policy now says, that when you're promoted you get a 10 percent increase, or, you move to the lowest [salary] level of the next job. In his case, he'll get a 10 percent increase. He was asking for consideration to take him beyond that. And, he was using as a precedent the item in our personnel policy that permits us to take new employees, when we hire them, and consider their experience and where it exceeds the minimum requirement, to give five percent for each year, beyond which, you know, their experience takes them. We never put a provision in there to enable that for people getting a promotion. . . . I think it's a bad move. I think as long as we have the provision in there that takes into consideration the experience at the time of hire, if a person moves on and gets promoted, that's already been considered. And, at the time of promotion there would be no need to consider it a second time. That's my opinion.

. . . . .

I'm afraid . . . that if you do this in one instance you're going to have a rash of incidents. And every time somebody comes up for promotion, you're going to have to go through heart rendering [sic] discussion. And, you know, I like this guy. I would love to do and I've already promoted him several times in recognition of his good work.

. . . . .

But I don't want to recommend it as a whole salary change and in his case I think we have to draw the line there. I know he's going to be angry but I think that's what we have to do. That's my opinion.

*Murphy*, 32 F.Supp.2d at 758–759 (quoting Transcript of the Authority's Board Meeting, Executive Session, dated Sept. 28, 1995). The Executive Director of the Authority, John J. McAvaddy, agreed, stating: "[Murphy is] a good employee. He's a hard worker. Do anything you ask him to do. Take on additional work, but . . . it's hard for us to come up with a justification that's within the purview [of the policies] that you [the Board of Commissioners,] have given us." *Id.* Later that month, Murphy was promoted to Supervising Accountant. The Board declined his request for an exception to the promotion policy, and Murphy received the standard 10% raise. *Id.*

Murphy also alleged that the Authority's refusal to pay for him to take a municipal accounting course was further evidence of the reverse discrimination to which he was subjected. The Court, reviewing the circumstances surrounding this denial, found that on August 29, 1994, Murphy requested that the Authority pay his tuition for a course entitled Municipal Finance Administration. *Id.* at 760. Glowacki denied Murphy's request because Glowacki determined that having Murphy take the course would not be beneficial to the Authority. *Id.*[2] Glowacki explained the circumstances

---

**2.** Glowacki's testimony was as follows:

Q. So, it would be your claim you did not [deny the request to attend the Municipal Finance Administration course] arbitrarily or capriciously; right?

A. Yes.

Q. Tell us about the process [you employed in denying Murphy's request].

A. Look at the—the courses that are being requested, determine what value it has to

the Authority, does [the Authority] need it; and, if it doesn't, say no. . . . Or, if it's needed, say yes. . . . And if I said yes, it would then go to the executive director for final approval . . .

. Q. So you mentioned that you discussed [the course with Murphy,] and [he] told you he wants to get his municipal financing credentials. Did you then respond to

in detail, and reiterated that he denied Murphy's request not because of his race, but because Murphy already had the accounting courses necessary for the work he was performing. *Id.* at 761.

Q. ... Why did you determine that Mr. Murphy would not benefit from the same course?

A: Because he already had the accounting courses necessary for the work he was performing.

[And] I had intended to send him to the course that was specific to HUD [accounting].

. . . . .

. . . . .

[The Authority] wouldn't benefit from [sending Murphy to] the [municipal finance] course....

*Murphy,* 32 F.Supp.2d at 761 (citing Glowacki Dep. at 54–55).

Reviewing Murphy's claim for unlawful reverse discrimination in light of these facts, this Court held that Murphy had failed to make a prima facie case of reverse discrimination:

[T]he evidence in the summary judgment record clearly demonstrates that Murphy, a white male, was repeatedly promoted within the Authority, that Murphy received numerous raises consistent with the Authority's personnel policies, and that both Glowacki and McAvaddy considered Murphy to be an exemplary employee. *See* Def. Brief, Exh. A; *see also* Pl. Cert., Exh. F. Specifically, at the Board of Commissioner's meeting on September 28, 1995, Glowacki stated that "[t]here [was] no question about [Murphy's] competence,

or ability, or interest. [Murphy is] one of the best employees I have." *See* Pl. Cert., Exh. F. at 2. In addition, at the same meeting, McAvaddy informed the Board of Commissioners that, given the poor health of Robert Lawless, Murphy was in line to be promoted to Comptroller of the Authority. *See id.* at 5.

This Court cannot reasonably conclude that while Glowacki and McAvaddy considered Murphy an outstanding employee who eventually would assume the highest accounting position at the Authority, they were also conspiring to discriminate invidiously against him because of his race. Such an inference from the evidence of record is particularly unreasonable, given that Glowacki and McAvaddy hired Murphy, recommended him for numerous promotions, and praised him before the Board of Commissioners. Moreover, Glowacki is of the same race and gender as Murphy. *See Ditzel,* 962 F.Supp. at 604 (stating that "this Court ... is skeptical that plaintiff, a white male, can establish that he suffered reverse race discrimination at the hands of his white supervisor").

*Murphy,* 32 F.Supp.2d at 765–66.

As reflected in the above language cited from my earlier Opinion in this case, it was clear to this Court that at the time Defendants' summary judgment motion was filed, there were absolutely no legitimate grounds whatsoever for the Plaintiff's pursuit of his claims of reverse discrimination. Indeed, as I noted: "Murphy's certification in opposition to Defendants' motion for summary judgment does little more than 'replace conclusory allegations of the complaint ... with conclusory allegations of

---

him in some way by saying, "You don't need that," or anything else?

A. I told him I didn't think it was necessary [because "[m]unicipal accounting is not what we do at the [A]uthority."]

*Murphy,* 32 F.Supp.2d at 760 (citing Glowacki Dep.).

[the certification].'" *Id.* (citing *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Furthermore, I reached the same conclusion with respect to Murphy's claim of gender discrimination:

> For the same reasons as set forth [ ] above, I conclude that Murphy has failed to establish a prima facie case for unlawful reverse discrimination on the basis of gender. The record is completely devoid of any evidence of gender discrimination. Aside from the allegations in the Amended Complaint, there is nothing in the record that could reasonably support an inference of reverse gender discrimination.

*Murphy,* 32 F.Supp.2d at 767.

Given the paucity, indeed, the dearth, of any evidence whatsoever in the summary judgment record supporting Plaintiff's claims of reverse discrimination on the basis of race and sex, I conclude that Mr. Van Syoc's continued pursuit of this litigation constituted unreasonable and vexatious conduct which so multiplied the proceedings in this case as to constitute bad faith and merit the award of counsel fees and costs under 28 U.S.C. § 1927. Mr. Van Syoc was, or should have been, aware of the complete lack of evidence supporting his client's claims no later than August 17, 1998, when Defendants filed their Motion for Summary Judgment, if not sooner. Even then, he opposed the motion for summary judgment, and continued to inform Mr. Ercole in writing that the case had a settlement value "well into the six figures." Defs.App., Exh. D (letter, Clifford Van Syoc, Esq. to Charles Ercole, Esq., dated August 24, 1998). *See Hicks v. Arthur,* 891 F.Supp. 213, 215 (E.D.Pa.1995) (imposing counsel fees pursuant to § 1927 on plaintiffs' attorney in civil rights litigation where counsel failed to produce evidence to support any of the claims in response to motion for summary judgment).

Mr. Van Syoc's cavalier disregard for the undisputed facts of this case and the applicable law is further demonstrated by his assertion of *per quod* claims on behalf of Roseann Murphy, Plaintiff's wife, based on the NJLAD and Title VII. In granting Defendants' motion for summary judgment, I summarily dismissed these claims, because, pursuant to federal and New Jersey State law, "*per quod* claims cannot be sustained under either the NJLAD, [or] Title VII." *Murphy,* 32 F.Supp.2d at 770 (citing *Jones v. Jersey City Medical Center,* 20 F.Supp.2d 770, 773 (D.N.J. 1998)(Walls, J.)). Any potential assertion by Mr. Van Syoc that he was unaware of the state of the law at the time he filed Plaintiffs' claims is belied by the fact that he himself was counsel for the Plaintiffs in *Hurley v. Atlantic City Police Dep't,* 1995 WL 854478 (D.N.J.1995), a case in which my colleague, Judge Irenas, flatly rejected an identical claim. *See Hurley,* 1995 WL 854478 at *15 (citing *Verde v. City of Philadelphia,* 862 F.Supp. 1329, 1337 n. 5 (E.D.Pa.1994) (Title VII); *Catalane v. Gilian Instrument Corp.,* 271 N.J.Super. 476, 499–500, 638 A.2d 1341, (App.Div.), *certification denied,* 136 N.J. 298, 642 A.2d 1006 (1994) (NJLAD)). Judge Irenas's holding in *Hurley* was subsequently affirmed by the Third Circuit, *see* 174 F.3d 95 (3d Cir.1999), and *cert. denied,* 528 U.S. 1074, 120 S.Ct. 786, 145 L.Ed.2d 663 (2000).

Finally, I find that Mr. Van Syoc's posturing in this case provides further evidence of his bad faith in pursuing this litigation. The settlement demands he made, which never dropped below $300,000 for a claim which, for the reasons I have set forth at length above and in my earlier Opinion, was objectively baseless, demonstrate complete disregard for the requirement that parties or their attorneys must

evaluate discovered facts and intelligently analyze legal issues before the start of pretrial conferences. *Cf. In re Novak*, 932 F.2d 1397, 1405 (11th Cir.1991) (discussing important role played by pretrial settlement conferences in helping court and parties maximize limited resources though efficient management of litigation).

In the three-page Letter Memorandum, dated March 2, 2001, which he submitted at this Court's request in response to Defendants' Supplemental Application for Counsel Fees and Associated Expenses, Mr. Van Syoc, demonstrating his propensity for conclusory statements unsupported by the record, simply asserted, "[h]ere, no bad faith exists which would support the imposition of sanctions." Pl.s' Lett. Mem. at 3. This statement constitutes the *entirety* of Mr. Van Syoc's argument as to why this Court should not require him to pay Defendants' attorneys' fees pursuant to 28 U.S.C. § 1927. *Id.* Needless to say, I do not find Mr. Van Syoc's argument, such as it is, persuasive.

■■■ For the reasons set forth above, I conclude that Mr. Van Syoc acted in a vexatious and unreasonable manner warranting an award of counsel fees and costs under § 1927. I note that § 1927 creates liability only for excess costs, expenses and attorneys' fees reasonably incurred because of the attorney's unreasonable and vexatious multiplication of the proceedings. 28 U.S.C. § 1927; *see Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir.1991). As the Fifth Circuit explained in *Browning*,

> By its terms this statute does not authorize the wholesale reimbursement of a party for all of its attorneys' fees or for the total costs of the litigation. *Road-*

*way Express, Inc. v. Piper*, 447 U.S. 752, 756 n. 3, 100 S.Ct. 2455, 65 L.Ed.2d 488, (1980); *Truck Treads, Inc. v. Armstrong Rubber Co.*, 868 F.2d 1472, 1474–75 (5th Cir.1989); *United States v. Blodgett*, 709 F.2d 608, 610–11 (9th Cir.1983). Under §§ 1927, only those fees and costs associated with "the persistent prosecution of a meritless claim" may be awarded. *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc). Except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under §§ 1927 may not shift the entire financial burden of an action's defense. *See Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1292 (5th Cir.1983), clarified on reconsideration, 722 F.2d 209 (5th Cir.1984).

*Browning*, 931 F.2d at 344–45. Accordingly, I must determine at what point in time Mr. Van Syoc's conduct unreasonably multiplied the proceedings in this case.

■■■ While I strongly suspect that Mr. Van Syoc was aware of the total absence of a legitimate basis in law and fact for his clients' claims at the commencement of this litigation or very shortly thereafter, I am certain that he had this knowledge at the point at which the Defendants' filed their motion for summary judgment on August 17, 1998. Accordingly, I shall award counsel fees and costs to Defendants against Mr. Van Syoc pursuant to 28 U.S.C. § 1927 for reasonable counsel fees and associated expenses incurred by Defendants from the date on which Defendants filed their motion for summary judgment, August 17, 1998, through the date this Court granted Defendants' motion, on January 27, 1999.[3]

---

**3.** I note that Defendants also requested counsel fees and associated costs for expenses incurred in their successful defense of this Court's holding on Plaintiffs' appeal to the

United States Court of Appeals for the Third Circuit. *See* Defs.' Second Suppl.App. for Counsel fees and Assoc. Expenses at 3–6 (February 13, 2001). Whether such fees

### 3. Calculation of Fees to be Awarded

In calculating the amount of fees to be awarded, courts employ the "lodestar" formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir.2001). The applicant for fees has the burden of demonstrating that the claimed rates and number of hours expended are reasonable. *Id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). "In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado*, 256 F.3d at 184 (citing *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir.1995)).

The reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. *Id.* "The court 'should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990)). The party requesting fees

should be assessed against Mr. Van Syoc is an issue which must be decided by the Court that heard the appeal, in this case, the United States Court Of Appeals for the Third Circuit. As provided by the Federal Rules of Appellate Procedure:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

"bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." *Id.* (citing *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir.1996)). The Third Circuit has held that "[t]he starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive." *Id.* at 183–84 (citation omitted).

### a. Reasonable Hours Expended

Defense counsel submitted detailed billing statements which describe the hours counsel expended on this litigation. *See* Defs.' App. at Exh. H (Billing Records). Unfortunately, defense counsel failed to specify the identity or qualifications of several of the individuals whose names appear on their billing records relating to this case. Indeed, counsel for the Defendants have provided evidence only as to the identities and qualifications of Charles A. Ercole, Esq., Stephen G. Raymond, Esq., and C. Alexa Abowitz, Esq. *See* Defs.' App. at 12 (identifying these attorneys as those who "performed the overwhelming majority of work in this case"); Defs.' App., Exh. B. (Ercole Aff.) at ¶ 1 (same) and Exh. H (billing records). Accordingly, I shall consider only the hours expended by these three attorneys.

*See* Fed. R.App. P. 38. As the D.C. Circuit explained, "[i]t is for the Court of Appeals, not the district court, to decide whether Rule 38 costs and damages should be allowed in any given case." *In re American President Lines*, 779 F.2d 714, 717 (D.C.Cir.1985). Accordingly, Defendants must present their Second Supplemental Application for Attorneys' Fees and Associated Expenses, covering attorneys' fees and cost incurred in defending the appeal, to the Court of Appeals. I intimate no view as to the merits of that Application.

Between August 17, 1998, the date on which Defendants moved for summary judgment, and January 27, 1999, the date on which this Court granted Defendants' motion for summary judgment, Defendants' counsels' billing records indicate that the following attorneys billed the following hours to this case:

| | |
|---|---|
| Charles A. Ercole | 133.5 hours |
| Stephen G. Raymond | 241.4 hours |
| C. Alexa Abowitz | 5.2 hours |
| Total | 380.1 hours |

Thus, the billing records reveal that counsel for the Defendants worked a total of 380.1 hours on this case between August 17, 1998 and January 27, 1999. *See* Defs.' App. Exh. H. This included preparing for and attending the final pre-trial conference; continuing settlement negotiations; and preparing for trial, which was scheduled for February 1, 1999, including legal research, preparing trial exhibits, preparing jury instructions, drafting motions *in limine*, meeting with witnesses, and drafting a trial brief. *Id.* I find that the hours billed by defense counsel for these activities, the bulk of which involved trial preparation, are reasonable. Moreover, I note that Mr. Van Syoc has not challenged Defendants' fees except to contend that discovery is necessary. For the reasons set forth in the margin, I reject Mr. Van Syoc's contention that discovery is necessary or appropriate.[4]

Additionally, counsel for Defendants incurred $2330.60 in out-of-pocket costs associated with this litigation between September 1, 1998 and January 27, 1998.[5] These costs included copying and binding; postage and Federal Express; telephone and fax; and LEXIS research. I find these costs, incurred over five months' of trial preparation, to be reasonable. Once again, Mr. Van Syoc has not challenged the reasonableness of these costs. Accordingly, I shall award Defendants costs in the amount of $2,330.60.

### b. Hourly Rate

Having determined that the number of hours which counsel for Defendants expended was reasonable, the Court must now decide whether the hourly rate re-

---

4. In his Brief in Opposition to Defendants' Motion for Counsel Fees, Mr. Van Syoc argued that "should the Court determine that the movants have established their entitlement to an award, plaintiffs respectfully request discovery, in light of issues of fact as to whether the services claimed to have been rendered were in fact rendered," Pl.'s Br. at 8. Mr. Van Syoc is referring to the fact that counsel for the Defendants inadvertently included the name of a co-employee of plaintiff, Ms. Sharon Miller, on a list of witnesses interviewed by counsel for the Defendants on September 30, 1998. Ms. Miller was not in fact interviewed on that date. Counsel for the Defendants submitted an Affidavit explaining that while counsel had planned to interview Ms. Miller on that day, she was unavailable. Defs.' Reply. Br., Exh. A (Ercole Aff.). Counsel testified that he nonetheless spent the 8.5 hours reflected in the billing records for that date interviewing other witnesses and performing other tasks relating to this case. *Id.* at ¶ 6. I find this explanation entirely reasonable. Indeed, the fact that Mr. Van Syoc would have this Court and Defendants engage in further discovery on this particular claim which is based on a typographical error of no consequence, when there is no evidence in the record whatsoever to support an inference that counsel for Defendants falsified their billing records, and the error did not actually affect the amount billed, is but further evidence of Mr. Van Syoc's vexatious approach to this litigation.

5. This calculation does not include costs expended during August, 1998, because the billing and expense records submitted by Defendants contain data aggregated only by month, as opposed to by date. Therefore, I cannot determine when, or for what activity, counsel for Defendants incurred the costs listed for August. Accordingly, I am including only those costs incurred between September 1, 1998, and January 27, 1999 in the calculation of costs.

quested by counsel for Defendants is reasonable. *Maldonado,* 256 F.3d at 184. Counsel for the Defendants requested an hourly rate of $150. To support this rate, counsel submitted an affidavit describing the education and experience of Mr. Ercole, who, at the time this petition was filed, was a sixth year attorney. *See* Defs.' App. at Exh. B (Ercole Aff.). Additionally, Mr. Ercole has noted that Mr. Raymond "is a seasoned trial attorney who spent fifteen years with the Burlington County Prosecutor's Office," prior to which he had his own private practice. Defs.' App. at 12. Finally, Ms. Abowitz was a fourth year associate at the time this litigation occurred. *Id.*

According to Mr. Ercole's Affidavit, his time was then typically billed at $175/hour, and Mr. Raymond's time was then billed at $165/hour. Defs'.App., Exh. B at ¶ 6. Ms. Abowitz's time was then billed at $140/hour. Messrs. Ercole and Raymond and Ms. Abowitz were then associates at Montgomery, McCracken, Walker & Rhoads, LLP, which contracted to provide legal services to the Defendants at the rate of $150/hour. *Id.* at ¶ 6 and n. 1. The Defendants' insurance carrier pays a maximum hourly rate of $125/hour; however, the Defendants agreed to pay the additional $25/hour for the time of Messrs. Ercole and Raymond. Defs.' App. at 13, n. 6.

Given their respective levels of experience, I find that $150/hour is a reasonable hourly rate for Messrs. Ercole's and Raymond's time, and $125/hour is a reasonable hourly rate for Ms. Abowitz's time. *See Lewis v. Babbitt,* 1999 WL 551878 at *2 (E.D.Pa.1999) (finding, in civil rights case, that hourly rate of $150/hour would be reasonable for mid-level associate in Philadelphia area); *Brennan v. Springfield Tp.,* 1998 WL 792180 (E.D.Pa.1998) (finding that hourly rate of $200 for plaintiff's primary counsel and $125 for associates in civil rights case was reasonable).

### c. Calculation of the Lodestar

For the reasons set forth above, I calculate the lodestar amount for Defendants' attorneys' fees in this case as follows:

| | | | | | |
|---|---|---|---|---|---|
| Charles A. Ercole | $150/hour | × | 133.5 hours | = | $20,025 |
| Stephen G. Raymond | $150/hour | × | 241.4 hours | = | $36,210 |
| C. Alexa Abowitz | $125/hour | × | 5.2 hours | = | $ 650 |
| | | | TOTAL | = | $56,885 |

---

Accordingly, I find that Defendants are entitled to a total of $56,885 in attorneys' fees. Adding the $2,330.60 of costs to which I found Defendants to be entitled, the total amount of attorneys' fees and costs to be assessed against Mr. Van Syoc personally is $59,215.60.

### ORDER

This matter having come before the Court on the Application of Defendants for Counsel Fees and Associated Expenses, pursuant to 42 U.S.C. § 1988 and/or 28 U.S.C. § 1927, Charles A. Ercole, Esq., Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, appearing on behalf of Defendants, Housing Authority and Urban Redevelopment Agency of the City of Atlantic City, John Glowacki, John J. McAvaddy, Jr., and John P. Whittington, Clifford L. Van Syoc, Esq., Van Syoc Law Offices, Chartered, appearing on behalf of Plaintiffs, Todd Murphy and Roseann Murphy; and,

The Court having considered the Application for Counsel Fees and Associated Expenses submitted by counsel for the Defendants, and the opposition submitted by Mr. Van Syoc, as well as the oral argument of counsel; and,

This Court having found that Counsel for the Plaintiffs, Clifford L. Van Syoc, Esq., multiplied the proceedings in this case unreasonably and vexatiously in a manner that demonstrates bad faith in violation of 28 U.S.C. § 1927;

For the reasons set forth in the Opinion filed simultaneously with this Order, IT IS on this 27th day of August, 2001, hereby ORDERED that:

1. Defendants' Application for Counsel Fees and Associated Expenses shall be GRANTED pursuant to 28 U.S.C. § 1927; and,

2. Within 30 days of the date of this Order, counsel for Plaintiffs, Clifford L. Van Syoc, Esq., shall pay counsel fees to the Defendants in the amount of $56,885, and costs in the amount of $2,330.60, or a total of $59,215.60.