John **MRUZ, Vasilike D. Nika, and Jane Johnson, Plaintiffs,**

v.

**CARING, INC., et al, Defendants.**

**No. CIV. A. 97CV01468.**

United States District Court, D. New Jersey.

Sept. 26, 2001.

Robert A. Davitch, Scott A. George, Sidkoff, Pincus & Green, P.C., Philadelphia,

PA, for Plaintiffs, John Mruz, Vasilike D. Nika, and Jane Johnson.

Carl D. Poplar, Poplar & Eastlack, A Professional Corporation, Turnersville, NJ, for Gary Green.

Paul A. Rowe, Alan S. Naar, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, LLP, Woodbridge, NJ, for Defendants, Fox, Rothschild, O'Brien & Frankel, LLP and Ian Meklinsky.

## OPINION

STEPHEN M. ORLOFSKY, District Judge:

Plaintiffs, John Mruz, Vasilike D. Nika, and Jane Johnson, as well as their attorney, Gary Green, Esq., individually, have appealed the Order of Magistrate Judge Robert B. Kugler which granted Defendants' motion to revoke the *pro hac vice* admission of Mr. Green. The issue presented by this appeal is whether Judge Kugler's invocation of the traditional inherent power of federal courts to sanction attorneys, in this case the revocation of a *pro hac vice* admission of an unruly and offensive attorney, survives the Third Circuit's recent decision in *Saldana v. Kmart Corporation*, 260 F.3d 228 (3d Cir.2001). For the reasons set forth below, I reluctantly conclude that *Saldana* compels me to reverse the decision of the Magistrate Judge because I find that it is now contrary to the law of this Circuit. My reversal of Judge Kugler's Order, however, does not, in any way, condone Mr. Green's offensive behavior. As this Court recently

noted: "While Rambo may be a success at the box office, lawyers who appear in this Court and adopt Rambo as a role model do so at their peril." *Murphy v. Housing Authority and Urban Redevelopment Agency of the City of Atlantic City*, 158 F.Supp.2d 438 (D.N.J.2001).

## I. BACKGROUND

The facts and procedural background giving rise to this protracted lawsuit are set forth in detail in this Court's January 28, 1998 opinion, *Mruz v. Caring, Inc.*, 991 F.Supp. 701 (D.N.J.1998) ("*Mruz I*")[1], and, therefore, will not be repeated here. What follows is a summary of the facts relevant to this appeal.

On March 21, 1997, Plaintiffs, John H. Mruz, Vasilike D. Nika, and Jane A. Johnson ("Plaintiffs"), filed this action, which arises out of their discovery and investigation of alleged Medicaid and tax fraud by their employers and Plaintiffs' subsequent termination. The Defendants included[2] Plaintiffs' employer, Caring, Inc.; Caring, Inc. Board Members; Caring, Inc.'s law firm, Fox Rothschild, O'Brien & Frankel; and Ian Meklinsky, Esq. ("Meklinsky"), the Fox Rothschild attorney who represented Caring, Inc. in the circumstances giving rise to this case.

On July 7, 1997, Judge Kugler granted the unopposed motion of Gary Green, Esq. of Sidkoff, Pincus & Green, P.C., to be admitted *pro hac vice*, pursuant to Local Civil Rule 101.1(c)[3], as counsel for Plain-

---

**1.** This acrimonious lawsuit has already been the subject of two published Opinions and one unpublished Opinion issued by this Court. *See Mruz v. Caring, Inc.*, 991 F.Supp. 701 (D.N.J.1998); *Mruz v. Caring, Inc.*, 39 F.Supp.2d 495 (D.N.J.1999); *Mruz v. Caring, Inc.*, No. 97cv01468 (D.N.J. filed June 24, 1999).

**2.** Plaintiffs settled with the Caring, Inc. Defendants on May 25, 1999. The case is pro-

ceeding against Defendants, Fox, Rothschild, O'Brien & Frankel, and Ian Meklinsky, Esq.

**3.** The Local Civil Rules were renumbered in 1997. Thus, Mr. Green was admitted *pro hac vice* pursuant to then General Rule 4. The Local Civil Rules concerning Professional Responsibility and Discipline of Attorneys which govern Mr. Green's admission were likewise renumbered. At the time of Mr. Green's admission they were General Rules 6 and 7,

tiffs. The Order granting Mr. Green's *pro hac vice* admission stipulated that Mr. Green, a member of the bar of the Supreme Court of the Commonwealth of Pennsylvania, would be bound by the Local Civil Rules of the United States District Court for the District of New Jersey, including provisions concerning Judicial Ethics and Professional Responsibility[4] and Discipline of Attorneys[5]. *See* Order 7/7/97.

On May 18, 2000, Defendants moved to revoke Mr. Green's *pro hac vice* admission. The Revocation Motion was founded on Defendants' allegation that throughout the course of discovery, Mr. Green engaged in "highly uncivil and abusive behavior clearly designed to intimidate witnesses and counsel and to obstruct the discovery process." *Mruz v. Caring*, 107 F.Supp.2d 596, 600 (D.N.J.2000). Mr. Green denied these allegations. He argues that whatever inappropriate behavior he may have engaged in was justified as a response to the equally egregious conduct of his adversaries. Even if true, that argument is absurd, not to mention petulant. Indeed, it is clear from the record before me that for Mr. Green, this case is no longer about his clients' legal interests. It has become his own all-consuming personal crusade for vindication.

After the third day of the deposition of Meklinsky, Defendants filed a Motion to revoke Mr. Green's *pro hac vice* admission for his misconduct. The parties submitted extensive briefs, exhibits, certifications, and supplemental certifications, the rele-

---

respectively. The substance of all of the rules pertinent to this case was unaffected by the renumbering.

4. Local Civil Rule 103.1 states, in pertinent part:

(a) The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of members of the bar admitted to practice in this Court, subject to such modification as may be required or permitted by Federal statute, regulation, court rule or decision of law.

. . . . .

(c) The GUIDELINES FOR LITIGATION CONDUCT adopted by the American Bar Association's Section of Litigation in August 1998, are hereby adopted by this Court and incorporated into these Rules as Appendix R. These Guidelines have been adopted by this Court to encourage civility, courtesy and professionalism among the bench and bar. They are purely aspirational in nature and are not to be used as a basis for litigation, liability, discipline, sanctions, or penalties of any type. *See* L. Civ. R. 103.1 (2001).

5. Local Civil Rule 104.1 states, in pertinent part:

The Court, in furtherance of its inherent power and responsibility to supervise the conduct of attorneys who are admitted to prac- tice before it or admitted for the purpose of a particular proceeding (pro hac vice), promulgates the following Rules of Disciplinary Enforcement

. . . . .

(e) Disciplinary Proceedings

(1) Every attorney authorized to practice law or appearing before this Court, including those specially authorized for a limited purpose or in connection with a particular proceeding pursuant to L. Civ. R. 101.1, shall be subject to the disciplinary jurisdiction of this court.

(2) When misconduct or allegations of misconduct which, if substantiated, would warrant discipline of an attorney, shall come to the attention of a Judge of this Court, and the applicable procedure is not otherwise mandated by these Rules, that Judge shall refer the matter in writing to the Chief Judge. The Chief Judge may refer the matter to the appropriate State disciplinary body, or, if the Chief Judge concludes that further investigation is warranted, he or she shall direct the Clerk to refer the matter to an attorney ("investigating attorney") who is admitted to practice before this Court to conduct such investigation in order to determine whether a formal order to show cause should issue.

. . . . .

*See* L. Civ. R. 104.1 (2001).

vant portions of which are set out in all their unseemly detail in Judge Kugler's Opinion. Judge Kugler heard Oral Argument on the Pro Hac Vice Revocation Motion on July 7, 2000.

After a "meticulous[ ] review[ ] of all transcripts, audio tapes and papers submitted", 107 F.Supp.2d at 614, Judge Kugler found that Mr. Green's behavior was "venomous, abusive, outrageous and personal" *id.* at 613, and violated the Rules of Professional Conduct, specifically RPC 3.2, which Mr. Green agreed to abide by under the terms of his *pro hac vice* admission. Judge Kugler further found that Mr. Green "purposefully disregarded the admonitions and warnings of [this Court issued in *Mruz v. Caring*, 991 F.Supp. 701, 721 (D.N.J.1998)(Orlofsky, J.) ("*Mruz I*") and *Mruz v. Caring*, 39 F.Supp.2d 495, 507 (D.N.J.1999)(Orlofsky, J.)("*Mruz II*") ], thereby violating an Order of this court," *id.* at 614; that his relentless sarcasm "render[ed] the fact-finding process of a deposition virtually meaningless and his briefs incredible," *id.;* and that his overall behavior "clearly resulted in prejudice to defendants and to the administration of justice." *Id.* Relying on the Court's inherent power to sanction attorney conduct, Judge Kugler granted Defendants' Motion to revoke Mr. Green's *pro hac vice* admission. *Mruz*, 107 F.Supp.2d at 614–15. Judge Kugler considered lesser sanctions under Fed. R. Civ. P 26(e)(5) and 30(d)(2),

but found none "would rectify the grievous harm caused by Green's actions." *Id.* at 614.

## II. STANDARD OF REVIEW

The Federal Magistrates Act of 1968 (the "FMA") created the position now known as Magistrate Judge and allowed District Courts to refer a host of matters to Magistrate Judges for determinations subject to various levels of review by the District Courts. *See* 28 U.S.C. § 636(b)(1)(2000). Congress has amended the FMA several times since 1968 to expand the scope of the duties of Magistrate Judges in order to alleviate the increased burdens on District Courts. *See, e.g.,* H.R.Rep. No. 94–1609 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162; *see generally* 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3066.

Subparagraph A of § 636(b)(1) governs a District Court's review of a Magistrate Judge's determination of a non-dispositive order, while subparagraph B governs the review of a Magistrate Judge's report and recommendation concerning a dispositive order.[6] The Federal Rules of Civil Procedure and the Local Civil Rules of the District of New Jersey each contain corresponding provisions. *See* Fed.R.Civ.P. 72(a), 72(b); Local Civ. R. 72.1(c)(1), 72.1(c)(2). "Matters concerning the disqualification of counsel and pretrial discovery matters are invariably

---

**6.** The FMA provides, in relevant part:
 Notwithstanding any provision of law to the contrary—
 (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except [dispositive motions]. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.
 (B) a judge may also designate a magistrate to conduct hearings, including evidentiary

hearings, and to submit to a judge of the court proposed findings of fact and recommendations for disposition, by a judge of the court, of any motion excepted in subparagraph (A)
 ... A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is taken.
 28 U.S.C. § 636(b)(1)(A)-(B) (2000).

treated as non-dispositive pretrial motions by courts in this jurisdiction and elsewhere." *Andrews v. Goodyear Tire & Rubber Co., Inc.,* 191 F.R.D. 59, 68 (D.N.J.2000)(citing cases).

The FMA provides that a District Court may reverse a Magistrate Judge's determination of a non-dispositive issue only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A)(2000); *accord* Fed. R.Civ.P. 72(a); Local Civ. R. 72.1(c)(1); *see, e.g., Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 (3d Cir.1986); *see also Cooper Hospital/University Medical Center v. Sullivan,* 183 F.R.D. 119, 127 (D.N.J. 1998) (Orlofsky, J.).

 Thus, this Court will review a Magistrate Judge's findings of fact for clear error. *See Cooper Hospital,* 183 F.R.D. at 127; *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1035, 1037 (D.N.J.1995). A finding is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lo Bosco,* 891 F.Supp. at 1037 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *see also Cooper Hospital,* 183 F.R.D. at 127. In reviewing a Magistrate Judge's factual determinations, a District Court may not consider any evidence which was not presented to the Magistrate Judge. *See Haines v. Liggett Group, Inc.,* 975 F.2d 81, 92 (3d Cir.1992); *Cooper Hospital,* 183 F.R.D. at 127.

 On the other hand, this Court will conduct a *de novo* review of a Magistrate Judge's legal conclusions. *See Haines,* 975 F.2d at 91 ("the phrase 'contrary to law' indicates plenary review as to matters of law"); *accord Lo Bosco,* 891 F.Supp. at 1037 ("this Court's review is plenary as to matters of law"); *see also Campbell v.*

*International Business Machines,* 912 F.Supp. 116, 119 (D.N.J.1996) ("a district court reviews the non-dispositive order of a magistrate judge for legal error or clearly erroneous findings of fact").

## III. DISCUSSION

Plaintiffs and Mr. Green make several arguments in support of their position that Judge Kugler's Order revoking Mr. Green's *pro hac vice* admission should be vacated as clearly erroneous and contrary to law. They contend that Judge Kugler: (1) erred in finding that Defendants had not waived their right to seek revocation of Mr. Green's *pro hac vice* status; (2) failed to consider the interests of Mr. Green's clients; (3) misapplied the inherent power of the court to sanction attorneys; (4) denied Mr. Green due process; and (5) failed to identify an adequately ascertainable legal standard in ordering the sanction of disqualification. Because I find, based upon the Third Circuit's recent decision in *Saldana,* a misapplication of the Court's inherent power to sanction attorneys, I need not address Plaintiffs' and Mr. Green's other arguments.

 The United States Supreme Court explored the inherent power of federal courts to discipline attorneys in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In *Chambers,* the Court reiterated its early pronouncement that "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect [ ] and decorum [ ] in their presence, and submission to their lawful mandates." 501 U.S. at 43, 111 S.Ct. 2123 (quoting *Anderson v. Dunn,* 19 U.S. 204, 6 Wheat. 204, 5 L.Ed. 242 (1821)). These powers are "governed ... by the control necessarily vested in courts to manage their own affairs so as to achieve the or-

derly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). The Court has long recognized that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Id.* (citing *Ex parte Burr*, 22 U.S. 529, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824)); *see also Saldana*, 260 F.3d at 237. The Court cautioned, however, that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44, 111 S.Ct. 2123 (internal citations omitted).

■■■ The *Chambers* Court found that a court's inherent power coexists with the sanctioning power bestowed by Fed. R.Civ.P. 11 and 28 U.S.C. § 1927. The Court stressed, however, that "invocation of the inherent power would require a finding of bad faith." *Id.* at 49, 111 S.Ct. 2123. Additionally, the Court advised that "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50, 111 S.Ct. 2123; *see also Saldana*, 260 F.3d at 238 (" 'generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanction exists' ")(quoting *Montrose Medical Group v. Bulger*, 243 F.3d 773, 785 (3d Cir. 2001))(when rules do not provide the court with authority to sanction all conduct deserving of sanction, they are not "up to the task"); *Klein v. Stahl GMBH & Co. Mas-*

*chinefabrik*, 185 F.3d 98, 109 (3d Cir.1999)(instructing a court to "avail itself of its inherent sanctioning power only when absolutely necessary").

In *Chambers*, the Court upheld the District Court's use of its inherent sanctioning powers because some of the objectionable conduct at issue "could not be reached by Rule 11, which governs only papers filed with a court" and because "sanctions under § 1927, ... applies only to attorneys, ... and because the statute was not broad enough to reach 'acts which degrade the judicial system,' including 'attempts to deprive the Court of jurisdiction, fraud, misleading and lying to the Court.' " 501 U.S. at 41–42, 111 S.Ct. 2123 (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 124 F.R.D. 120, 139 (W.D.La.1989)).

■■■ The Third Circuit outlined the steps a court must take in imposing sanctions under its inherent powers in *Republic of Philippines v. Westinghouse Electric Corporation.* First, the court must explain why the conduct warrants a sanction, keeping in mind that a pattern of wrongdoing may require a harsher sanction than an isolated incident and conduct that hinders the administration of justice may require a still harsher sanction. Then, the court must consider the range of available sanctions, and, although the court need not "exhaust all other sanctioning mechanisms prior to resorting to its inherent power, the court must explain why it has chosen any particular sanction from the range of alternatives it has identified." *Republic of the Philippines*, 43 F.3d 65, 74 (3d Cir.1994)(quoting *Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir.1991)).

■■■ Here, Judge Kugler found that Mr. Green's behavior during the deposition and discovery process was "venomous, abusive, outrageous and personal." *See Mruz*, 107 F.Supp.2d at 613. The portions of the deposition transcripts cited by

Judge Kugler provide ample factual support for Judge Kugler's conclusion that Mr. Green used several objectionable techniques to disrupt the fact-finding purpose of the depositions. Mr. Green engaged in a pattern of behavior in which he interrupted deponents' answers, initiated inappropriate arguments with counsel, accused his adversaries of purposely evading the questions posed to them, called them liars, and shouted at witnesses and counsel throughout the process. *Id.* at 607–13.

Judge Kugler found that Mr. Green's behavior violated New Jersey Rule of Professional Conduct 3.2, made applicable in this Court by Local Civil Rule 103.1 [7], which requires lawyers to "make reasonable efforts to expedite litigation consistent with the interests of the client and [to] treat with courtesy and consideration all persons involved in the legal process." RPC 3.2. Judge Kugler additionally pointed to the Guidelines for Litigation Conduct ("Guidelines") [8], adopted by the American Bar Association and by this Court [9], in imposing the sanction of revocation. Judge Kugler acknowledged that the Guidelines are merely aspirational and may not be used as the basis for sanctions, but he alluded to them to demonstrate that "they put a lawyer on notice of what kinds of behavior may otherwise violate the Rules of Professional Conduct and other disciplinary rules." *Mruz,* 107 F.Supp.2d at 606–07.

In considering the appropriate sanction for Mr. Green, Judge Kugler made the following observations:

> Other, lesser sanctions were carefully considered. These would include prohibiting Mr. Green from attending the remainder of Mr. Meklinsky's deposition (or any other depositions), Fed.R.Civ.P.

26(e)(5), monetary penalties for the time and expense wasted by the incessant (and useless) bickering, a period of "probation" for Greene where any further misconduct would automatically result in revocation, and setting time limits on further depositions, Fed.R.Civ.P. 30(d)(2). However, none would rectify the grievous harm caused by Green's actions. . . .

> By its very nature, the discipline of an attorney must be a pliable mechanism, in order for the penalty to be shaped to fit the circumstances. In the exercise of its inherent powers to discipline attorneys, the court must evaluate the type and degree of an attorney's misconduct, and the type of sanction, if any, that would best remedy the damage done to the particular litigation and to the judicial process as a whole. The court must keep in mind that the primary objective of any sanction is to preserve the integrity of the process, rather than to punish the offender. This court believes that revocation is the most effect way to serve the goals of restoring this particular case to its track toward a just resolution and maintaining respect for the court system.

*Id.* at 614–15.

Judge Kugler properly invoked the Court's inherent power to sanction Mr. Green. He explained in great detail why Mr. Green's behavior warranted such a sanction, he made clear that the basis for the sanction was Mr. Green's violation of the Rules of Professional Conduct that apply to attorneys admitted to the United States District Court for the District of New Jersey, he considered the range of sanctions available to him under the Fed-

**7.** *See infra,* n. 4.

**8.** *See infra,* n. 4.

**9.** *See infra,* n. 4.

eral Rules of Civil Procedure, and concluded that none could adequately address the systematic nature and "grievous harm" to the judicial process and to the parties which was caused by Mr. Green's conduct. He concluded therefore, that the rules were not "up to the task" and a resort to the Court's inherent power to impose sanctions was warranted.

Were the law of this Circuit today the same as it was at the time Judge Kugler issued his Order, this Court would not hesitate to affirm his decision. The Third Circuit's recent decision in *Saldana*, however, requires me to examine the specific nature of Mr. Green's behavior to determine whether it warranted the imposition of a sanction under the Court's inherent power· and whether the sanction was tailored to address the harm caused.

In *Saldana v. Kmart Corporation*, 84 F.Supp.2d 629 (D.Vi.1999), the United States District Court for the District of the Virgin Islands granted the summary judgment motion of Defendants in a negligence action. In the same opinion, the District Court also granted Defendants' motion for sanctions against Plaintiff's counsel, Ms. Rohn, Esq., for her repeated use of profanity during depositions and telephone conversations with counsel. The District Court found that Rohn's behavior violated the Preamble and Rule 8.4 of the ABA Rules of Professional Conduct made applicable to the Bar of the District Court of the Virgin Islands by L.R. Civ. P. 83.2(a)(1). Those Rules require lawyers to "demonstrate respect for the legal system and for those who serve it" and make it misconduct to "engage in conduct that is prejudicial to the administration of justice." *See Saldana*, 84 F.Supp.2d at 639. After describing the objectionable behavior, the Court imposed sanctions on Ms. Rohn pursuant to L.R. Civ. P. 83.2(b)(4) and Fed.R.Civ.P. 11, which included at-

tending a continuing legal education seminar on civility in the legal profession, writing letters of apology to all the lawyers and witnesses she demeaned, sending a copy of the court's Order to the ethics committee of her bar association, and paying the attorney's fees and costs incurred by the defendants in pursuing the sanction motion. *Id.* at 641.

Ms. Rohn appealed the sanctions imposed by the District Court, arguing that the District Court had "violated her due process rights to fair notice by failing to specify in advance of the hearing that sanctions would or at least could be premised on Local Rule 83.2." *Saldana*, 260 F.3d at 236. While the Third Circuit, in dicta, indicated that it believed that Ms. Rohn was on notice of the Court's power to sanction her and to suspend her license, it nevertheless reversed the District Court's imposition of sanctions because it found her behavior "simply [did] not support the invocation of the Court's inherent powers ... [because] the language complained of in this case did not occur in the presence of the Court and there is no evidence that it affected either the affairs of the Court or the 'orderly and expeditious disposition' of any cases before it." *Id.* at 237.

The similarity between the facts of *Saldana* and the facts underlying the revocation of Mr. Green's *pro hac vice* admission in this case are striking. Both cases involve overly aggressive attorneys to whom "litigation is a form of mortal combat which [they] must win at any and all costs," *Saldana*, 84 F.Supp.2d at 639. Both Ms. Rohn's and Mr. Green's discourteous and offensive behavior occurred outside the presence of the Court in depositions. Both attorneys offended their opposing counsel, as well as witnesses. Both the District Court in *Saldana* and Judge Kugler in this case made specific

findings that the behavior complained of affected the administration of justice. *Id.* at 639–40; *Mruz*, 107 F.Supp.2d at 614. In *Saldana*, the District Court found Ms. Rohn's conduct "demean[ed] the entire judicial process, the Court, and the Bar in general, other counsel in particular, and even Attorney Rohn herself. That she used this gutter language in formal, court sanctioned proceedings in front of members of the public who were testifying under oath as deposition witnesses is especially appalling." In this case, Judge Kugler concluded that Mr. Green's behavior "caused significant delays and distractions in a case that has already been pending in this court over three years and caused the parties and court to unnecessarily expend valuable time and resources." *Mruz*, 107 F.Supp.2d at 614.

The Third Circuit's conclusion in *Saldana* that because "[t]he language complained of ... did not occur in the presence of the Court and there is no evidence that it affected either the affairs of the Court or the 'orderly and expeditious disposition' of any cases before it," *Saldana*, 260 F.3d at 238, casts doubt on the propriety of Judge Kugler's sanction of Mr. Green for behavior that similarly occurred outside the presence of the Court. This Court has considered the question of whether Judge Kugler's finding that Mr. Green's behavior "caused significant delays and distractions" in this case distinguishes it sufficiently from *Saldana* to affirm his use of the court's inherent power to sanction Mr. Green. I conclude that it does not for two reasons.

First, the proliferation of attorneys as counsel, defendants, and witnesses in this case has created an atmosphere of acrimony from the outset. Counsel on both sides have engaged in an overzealous motion practice which has hindered the "orderly and expeditious disposition" of this case.

To illustrate this point, pending before me now, are no less than four appeals from Judge Kugler's rulings in this case. To put this matter in perspective, in the last five years, this Court has not had four appeals from a decision of a Magistrate Judge in all the cases which have been assigned to it. To say the least, the coincidence of four appeals from decisions of a Magistrate Judge in this case is statistically significant. It reflects a discourteous, rapacious zeal which exceeds in volume and intensity the zeal with which an attorney should represent a client. Although Mr. Green's behavior has, no doubt, exacerbated what is already a hotly contested case, I cannot conclude that his behavior was the only factor affecting the administration of justice in this case.

Second, even were I to conclude that Mr. Green's offensive behavior out of the presence of this Court was sufficient to warrant the invocation of the court's inherent sanctioning power, I cannot, after *Saldana*, conclude that the punishment fits the crime. In *Saldana*, the Third Circuit held that requiring an attorney to attend a "civility in litigation" seminar, to send letters of apology to her colleagues, and to pay attorney's fees and costs for the pursuit of the sanction motion was an inappropriate punishment for the "petty and long-simmering" dispute between the attorneys in that case. *Saldana*, 260 F.3d at 238. The sanction which Judge Kugler imposed on Mr. Green appears much more extreme and affects not only Mr. Green, but his clients as well. While it is indeed true that admission *pro hac vice* is a privilege, not a right, *see Leis v. Flynt*, 439 U.S. 438 442, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (admission pro hac vice is "not a right granted by statute or the Constitution"), revocation of that privilege, once bestowed, sends a strong message which works a lasting hardship on an attorney's reputation. More importantly, the revocation of

Mr. Green's *pro hac vice* admission deprived his clients of their chosen attorney well after the initiation of their case, indeed, in its third year.

The Plaintiffs apparently believe that whether they prevail in this lawsuit hinges on the skill and experience Mr. Green brings to the litigation. Throughout this process, they have expressed a strong desire to have the Court allow Mr. Green to continue as their attorney. *See* Johnson Cert., June 1, 2000, at ¶¶ 3–7; Mruz Cert., June 1, 2000, at ¶¶ 2–3; Nika Cert., June 2, 2000, at ¶¶ 2–3. Although Mr. Green's behavior has caused some prejudice to his adversaries by virtue of the delay and frustration he has caused, I do not believe that this prejudice outweighs the significant hardship that would be caused by depriving litigants of their counsel of choice *in media res.*

Furthermore, the Third Circuit's directive in *Saldana* that "were sanctions warranted, [the local rule] would have been 'up to the task,'" *Saldana*, 260 F.3d at 237, applies in this case as well. Judge Kugler had a host of options before him in sanctioning Mr. Green, including requiring Green to pay the fees and costs incurred by his adversaries as a result of his conduct; Fed.R.Civ.P. 37(g); Fed.R.Civ.P. 11; Fed.R.Civ.P. 30(d)(3); 28 U.S.C. § 1927; issuing a protective order preventing Mr. Green from attending any or all future depositions, Fed.R.Civ.P. 26(e)(5); and limiting the scope and duration of depositions, Fed.R.Civ.P. 30(d)(4). According to the Third Circuit's pronouncements in *Saldana*, one of the more targeted sanctions prescribed by the Federal Rules seem a more appropriate sanction, than the far-reaching and fatal sanction that was applied pursuant to the court's inherent power.

For the reasons set forth above, I find that Magistrate Judge Kugler's decision to grant Defendants' motion to revoke the *pro hac vice* admission of Mr. Green was contrary to law and therefore I shall reverse his order. Mr. Green should take little comfort in my reversal of Judge Kugler's Order. This Court has no doubt that the behavior exhibited by Mr. Green falls well below the standard which this District demands of attorneys practicing before it. Although the Guidelines for Litigation Conduct are aspirational, that does not mean that they can be ignored and derided. I wholeheartedly concur with the sentiments expressed by Judge Kugler:

> As is becoming clear to attorneys who practice in this District, this court is growing increasingly distressed by the deteriorating level of civility and decorum that has long been the hallmark of this estimable profession. It is the obligation of this court to protect and nurture the vestiges of professional legal conduct so that the practice of law is once again not only socially and commercially valuable, but also enjoyable and worthy of esteem. This court takes this obligation seriously, and conduct before the court that violates the principles of courtesy and professionalism embodied in the Rules of Professional Conduct will not be tolerated.

*Mruz*, 107 F.Supp.2d at 598.

Mr. Green is on notice. *Saldana* provides no shelter for the attorney who engages in such offensive conduct in the presence of the Court, or violates Rule 11 of the Federal Rules of Civil Procedure, *see Thomason v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121, 129–32 (D.N.J.1998)(Orlofsky, J.), or violates 28 U.S.C. § 1927 [10]. If any of the

---

**10.** 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or

behavior which gave rise to this motion occurs in the presence of this Court, or serves to delay further this already overlong litigation, this Court will not hesitate to impose appropriate sanctions. *See Murphy*, 158 F.Supp.2d 438 (D.N.J.)(Orlofsky, J.)(requiring Plaintiff's attorney to pay $59,215.60 in attorneys' fees and costs pursuant to 28 U.S.C. § 1927). A license to practice law is not a license to abuse the legal process, and this Court will not hesitate to curb such abuse if it occurs again.

## IV. CONCLUSION

For the reasons set forth above, I shall reverse the August 4, 2000 Order of Magistrate Judge Kugler revoking the *pro hac vice* admission of Gary Green, Esq.

## ORDER

This matter having come before the Court on an appeal by Plaintiffs/Appellants, John Mruz, Vasilike D. Nika, and Jane Johnson and Appellant, Gary Green, Esq. from an order, entered by the Honorable Robert B. Kugler, United States Magistrate Judge, on August 4, 2000, revoking the *pro hac vice* admission of Gary Green, Esq., Robert A. Davitch, Esq. and Scott A. George, Esq., Sidkoff, Pincus & Green, P.C., appearing on behalf of Plaintiffs, John Mruz, Vasilike E. Nika, and Jane Johnson; Carl D. Poplar, Esq., Poplar & Eastlack, A Professional Corporation, appearing on behalf of Appellant Gary Green, Esq.; and Paul A. Rowe, Esq. and Alan S. Naar, Esq., Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, LLP, appearing on behalf of Defendants, Fox, Rothschild, O'Brien & Frankel, LLP and Ian Meklinsky; and,

The Court having considered the submissions of the parties, and the record below, for the reasons set forth in the Opinion, filed concurrently with this Order;

IT IS, on this 26th day of September, 2001, hereby ORDERED that the August 4, 2000 order of Magistrate Judge Kugler revoking the *pro hac vice* admission of Gary Green, Esq. is REVERSED.

any Territory thereof *who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attor-* *neys' fees reasonably incurred because of such conduct* (emphasis added).
28 U.S.C. § 1927 (2000).