Steven M. VENEZIANO, Plaintiff,

v.

**LONG ISLAND PIPE FABRICATION & SUPPLY CORP., Robert Moss and Aetna U.S. Healthcare, Defendants.**

Civil Action No. 99–2753.

United States District Court,
D. New Jersey.

Dec. 31, 2002.

Diana Andreacchio, Esq., Perkasie, PA, for Steven M. Veneziano.

Jeffrey N. Naness, Esq., Naness, Chaiet & Naness, LLC, Jericho, NY, for Long Island Pipe Fabrication & Supply Corp.

Edward S. Wardell, Esq., Kelley, Wardell & Craig, LLP, Haddonfield, NJ, for Aetna U.S. Healthcare.

## OPINION

ORLOFSKY, District Judge.

## I. INTRODUCTION

Once again this Court is called upon to consider whether an attorney's conduct warrants a sanction pursuant to 28 U.S.C. § 1927, which requires an attorney to satisfy personally the excess costs, expenses and attorneys' fees caused by unreasonably and vexatiously multiplying the proceedings in a case in bad faith. *See id.; see also Murphy v. Hous. Auth. & Urban Redevelopment Agency of the City of Atlantic City,* 158 F.Supp.2d 438, 445–47

(D.N.J.2001) (Orlofsky, J.), *aff'd,* 2002 WL 31313861 (3d Cir. Oct.16, 2002).

Defendants, Long Island Pipe Fabrication & Supply Corp. ("Long Island Pipe"), Robert Moss ("Moss"), and Aetna U.S. Healthcare ("Aetna"), have filed motions for attorneys' fees as "prevailing defendants" in the action brought against them by Plaintiff, Steven M. Veneziano ("Veneziano"). I conclude that because Veneziano's claims against Aetna were "frivolous, unreasonable, or without foundation" under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.,* and in "bad faith" under the New Jersey Law Against Discrimination, N.J.S.A §§ 10–5.1, *et seq.,* Aetna is entitled to reimbursement of its reasonable attorneys' fees and costs incurred in defending against these claims. Veneziano's claims against Long Island Pipe and Moss, however, do not warrant the shifting of attorneys' fees.

I further conclude that the conduct of this case by Plaintiff's counsel, Diana Andreacchio, Esq., warrants a sanction under 28 U.S.C. § 1927. Ordinarily, a Plaintiff is responsible for his or her own attorney's fees and costs. Here, Ms. Andreacchio shall be ordered to personally compensate Aetna for its reasonable attorneys' fees and costs under Section 1927 because she unreasonably and vexatiously multiplied these proceedings in bad faith by pursuing frivolous claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In a six-count Complaint, filed on June 15, 1999, Veneziano alleged the following causes of action: (Count I) Violation of the Americans with Disabilities Act ("ADA") by Long Island Pipe and Moss; (Count II) Discrimination Under the New Jersey Law Against Discrimination ("LAD") by Long Island Pipe and Moss; (Count III)

Intentional Infliction of Emotional Distress ("IIED") by Long Island Pipe and Moss; (Count IV) Violation of the ADA by Aetna; (Count V) Discrimination under the LAD by Aetna; and (Count VI) Violation of the Employee Retirement Income Security Act ("ERISA") by Long Island Pipe and Moss. *See* Complaint, *Veneziano v. Long Island Pipe Fabrication Co.*, Civ. A. No. 99–2753(SMO) (D.N.J. June 15, 1999). The detailed factual background in this case is set forth in an earlier unpublished Opinion and Order of this Court, *Veneziano v. Long Island Pipe Fabrication Co.*, Civ. A. No. 99–2753(SMO) (D.N.J. April 10, 2002), and will not be repeated here, except where necessary to provide context for the resolution of the pending motions.

On November 15, 1999, with leave of the Court, Long Island Pipe filed a Third–Party Complaint against its workers' compensation insurer, United States Fire Insurance Company ("U.S.Fire"), seeking indemnification and a declaration that U.S. Fire was obligated to provide a defense against Veneziano's claims. Long Island Pipe and U.S. Fire subsequently filed cross-motions for summary judgment. In another unpublished Opinion and Order of this Court, *Veneziano v. Long Island Pipe Fabrication & Supply*, Civ. A. No. 99–2753(SMO), slip op. (D.N.J. May 17, 2001), I granted in part Long Island Pipe's Motion for Summary Judgment and declared that U.S. Fire was obligated to defend Long Island Pipe against Veneziano's ERISA Claims. *Id.* at 19.[1] I also granted in part U.S. Fire's Motion, dismissing Long Island Pipe's claim for a defense and indemnification against Veneziano's claims for punitive damages. I denied the Cross–Motions in all other respects.

On July 1, 2002, United States Magistrate Judge Joel B. Rosen granted the Plaintiff's motion to sever the third-party action from the underlying dispute, pursuant to Fed.R.Civ.P. 21 and administratively terminated the third-party action without prejudice until further order of the Court upon appropriate application by the parties. *See* Order, *Veneziano v. Long Island Pipe Fabrication & Supply*, Civ. A. No. 99–2753(SMO)(JBR) (D.N.J. July 1, 2002).

Long Island Pipe, Moss, and Aetna moved for Summary Judgment on Veneziano's Complaint. In an Opinion issued from the bench on March 19, 2001, I granted Aetna's Motion in its entirety and granted the Summary Judgment Motion of Long Island Pipe and Moss on all of Veneziano's claims, except his ERISA claim (Count VI). *See* Tr. of Hr'g, 27:15–20, 45:12–15, *Veneziano v. Long Island Pipe Fabrication & Supply*, Civ. A. No. 99–2753(SMO) (D.N.J. March 19, 2001). Additionally, because Veneziano did not oppose the Motions of Long Island Pipe and Moss to dismiss his claims for non-contractual or statutory damages under ERISA, I granted those Motions as well. *See* Tr. at 45:7–11.

Counsel for Veneziano, Ms. Andreacchio, appealed this Court's March 19, 2001 Orders to the Court of Appeals, even though no final order had yet been entered by this Court dismissing all claims as to all parties, nor had any certification been granted pursuant to Fed.R.Civ.P. 54(b). That appeal was dismissed by the Third Circuit on August 21, 2001 for lack of appellate jurisdiction. *See* Order, *Veneziano v. Long Island Pipe Fabrication & Supply*, No. 01–1977 (3d Cir. Aug. 21, 2001) (citing

---

**1.** I did not, however, decide whether U.S. Fire is required to indemnify Long Island Pipe for penalties imposed pursuant to 29 U.S.C. § 1132(c). *See Veneziano v. Long Is-* *land Pipe Fabrication & Supply*, Civ. A. No. 99–2753(SMO), slip op. (D.N.J. May 17, 2001), at 19.

*Shirey v. Bensalem Township*, 663 F.2d 472 (3d Cir.1981)).

Veneziano's remaining ERISA claims against Long Island Pipe and Moss were tried before this Court at a bench trial on February 4, 2002. In another unpublished Opinion, *Veneziano v. Long Island Pipe Fabrication & Supply*, Civ. A. No. 99–2753(SMO) (D.N.J. April 10, 2002), I concluded that Long Island Pipe had failed to provide Veneziano with timely and meaningful notice of his rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), in violation of 29 U.S.C. § 1166. I also concluded that the Defendants failed to provide Veneziano with a Summary Plan Description upon his request, in violation of 29 U.S.C. §§ 1021(a) & 1022. For these violations, I ordered Long Island Pipe to pay Veneziano a total of $2,237.00. *See* Order, *Veneziano v. Long Island Pipe Fabrication & Supply*, Civ. A. No. 99–2753(SMO) (D.N.J. April 10, 2002), ¶¶ 1–2.

The next step in the unending saga of this case was the filing of Plaintiff's Motion for Attorney's Fees, pursuant to 29 U.S.C. § 1132(g)(1). I granted Plaintiff's motion, in the reduced amount of $9,257.50, because Veneziano was not more than fifty percent successful on his ERISA claim. *See* Order, *Veneziano v. Long Island Pipe Fabrication & Supply*, Civ. A. No. 99–2753(SMO) (D.N.J. May 28, 2002), at 7.

Defendants have now moved for attorneys' fees, and a "Stay of Entry and/or Enforcement of Judgment Pending Determination of Defendant's Application for Costs and Attorney's Fees and Expenses."

■ On May 9, 2002, Plaintiff filed a Notice of Appeal of this Court's Orders entered on: March 19, 2001; April 10, 2002; and May 29[sic], 2002. Even after the entry of a final judgment and the filing of a Notice of Appeal, however, a District Court retains the power to adjudicate collateral matters such as applications for counsel fees. *See Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 199–200, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988); *Welch v. Bd. of Dirs. of Wildwood Golf Club*, 904 F.Supp. 437, 438 (W.D.Pa.1995) (citing *West v. Keve*, 721 F.2d 91, 95 n. 5 (3d Cir.1983)). For the reasons that follow, Aetna's motion for attorneys' fees shall be granted, and Long Island Pipe and Moss's motion for attorneys' fees shall be denied.

## III. DISCUSSION

### A. FEE–SHIFTING UNDER THE AMERICANS WITH DISABILITIES ACT

Unless a statutory exception applies, "[i]t is the general rule in the United States that ... litigants must pay their own attorney's fees," *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *see also Buckhannon Bd. and Care Home, Inc. v. West Va. Dep't of Health and Human Resources*, 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). This is known as the "American Rule." *Brytus v. Spang & Co.*, 203 F.3d 238, 241 (3d Cir.2000). A statutory exception to the American rule exists in this case because Plaintiff's claims were brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and are, thus, subject to the fee-shifting provision of the ADA, 42 U.S.C. § 12205, which provides:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, ..., a reasonable attorney's fee, including litigation expenses, and costs ...

*Id.* (West 2002).

■ In *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,*

434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the United States Supreme Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* The *Christiansburg* standard likewise applies to claims brought under the ADA, which contains a fee-shifting provision that uses substantially similar language as Title VII. *See Parker v. Sony Pictures Entm't, Inc.,* 260 F.3d 100, 111 (2d Cir.2001); *Bercovitch v. Baldwin School, Inc.,* 191 F.3d 8, 11 (1st Cir.1999); *Bruce v. City of Gainesville, Ga.,* 177 F.3d 949, 951–52 (11th Cir.1999). Although the United States Court of Appeals for the Third Circuit has not yet expressly adopted the *Christiansburg* standard for fee-shifting by prevailing defendants under the ADA, other Circuits have done so. *See e.g., Parker, Bercovitch,* and *Bruce, supra.* The Third Circuit generally treats case law under the ADA and Title VII interchangeably when there is no material difference in the question being addressed. *See Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.,* 60 F.3d 153, 157 (3d Cir.1995). Thus, I shall rely on the Supreme Court's *Christiansburg* decision in analyzing the Defendants' motions for fees.

## B. SUFFICIENCY OF PLAINTIFF'S CLAIMS

■ In considering whether a plaintiff's claim is "frivolous, unreasonable, or without foundation," *Christiansburg,* 434 U.S. at 421, 98 S.Ct. 694, the Court may assess, on a case-by-case basis: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *See E.E.O.C. v. L.B. Foster Co.,* 123 F.3d 746, 751 (3d Cir.1997).

The Court may also consider: (4) whether the issue was one of first impression requiring judicial resolution; and (5) whether the controversy is based sufficiently upon a real threat of injury to the plaintiff. *See Barnes Found. v. Township of Lower Merion,* 242 F.3d 151, 158 (3d Cir.2001).

■■ In deciding whether Veneziano's action was frivolous, unreasonable, or without foundation, this Court must refrain from engaging in *post hoc* reasoning and concluding that, because the plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. *See L.B. Foster,* 123 F.3d at 751 (citing *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. 694). Generally, fee-shifting in favor of prevailing defendants under the *Christiansburg* standard is not routine and is only to be sparingly exercised. *See L.B. Foster,* 123 F.3d at 751.

### 1. Veneziano's Claims Against Aetna

■ Veneziano brought two claims against Aetna, one under the ADA and one under the LAD. *See* Complaint (Counts IV and V). During the hearing on March 19, 2001, this Court concluded that Veneziano did not establish claims for retaliation under either statute. *See* Tr. of 3/19/01 H'rg ("Tr."), 49:11–25; 50:1–9.

Veneziano's claim under the ADA failed because he could not demonstrate that Aetna was his employer, which I concluded was "simply not a realistic characterization of the relationship between Aetna and Long Island Pipe, and Veneziano has not referred to any evidence in the summary judgment record to support such a characterization." Tr. 49:16–20. Ms. Andreacchio, Plaintiff's counsel, argued that Aetna was Veneziano's "constructive employer" based on an agency theory, but she was unable to demonstrate any control over Aetna by Long Island Pipe to support this

argument. *Id.* at 49:14–25; *Cf. Krouse v. American Sterilizer Co.*, 126 F.3d 494, 505 (3d Cir.1997); *Merritt v. Med. Disability Ins. Plan,* Civ. A. No. 96–4495, 1998 WL 1110694 (D.N.J. Aug.28, 1998), at *7 (benefits plan not an "employer" unless shown to be an agent of the traditional employer).

In considering the pending motions for attorneys' fees, I take heed of the policy behind fee-shifting in favor of prevailing defendants. "The *Christiansburg* test is intended to strike a balance between the need to eliminate the possible chilling effect on civil rights plaintiffs, who may decide not to pursue a meritorious suit for fear of suffering a fee award, and the goal of deterring plaintiffs from filing frivolous claims." *Hamer v. Lake County,* 819 F.2d 1362, 1367 (7th Cir.1987) (internal quotations omitted). The United States Court of Appeals for the Seventh Circuit has explained: "There is a significant difference between making a weak argument with little chance of success ... and making a frivolous argument with no chance of success.... [I]t is only the latter that permits defendants to recover attorney's fees." *Khan v. Gallitano,* 180 F.3d 829, 837 (7th Cir.1999).

Here, the factual record could not support an agency theory against Aetna, a national and well-known insurance company, and I conclude that Ms. Andreacchio's "agency argument" is "frivolous, unreasonable, or without foundation," 434 U.S. at 421, 98 S.Ct. 694, within the meaning of *Christiansburg, id.* I do not reach this conclusion based solely on the outcome of the summary judgment motion. *See Batteast Constr. Co., Inc. v. Henry County Bd. of Comm'rs,* 202 F.Supp.2d 864, 867 (S.D.Ind.2002) ("Attorney['s] fees will rarely be awarded where ... the district court grants the defendants' motion for summary judgment because of the absence of legally sufficient evidence."). Rather, I

conclude that Veneziano's retaliation claim against Aetna should never have been brought in the first instance.

It is no secret that the anti-retaliation provisions of the ADA do not apply to any person, but apply only to employers and other covered entities. *See* 42 U.S.C. § 12203(c). As this Court explained at the March 19, 2001 hearing:

42 U.S.C. § 12203(c) directs a person alleging a retaliation claim in the employment context of 42 U.S.C. § 12117 to find the remedies available to him or her for a violation of Section 12203. Section 12117, in turn, refers to the remedial provision of Title VII. Those provisions of Title VII do not permit an action against any person, but do permit an action against an employer, and a few other entities which are not relevant to this particular case. To hold that the anti-retaliation provision of the ADA applies to any person ... would render superfluous 42 U.S.C. § 12203(c).

Tr. 48:7–17. For Veneziano's anti-retaliation claim to survive, he had to show that Aetna was his employer under the statute. Because it was obvious from the summary judgment record that Long Island Pipe, not Aetna, was Veneziano's employer, I held that "Veneziano's arguments are simply unsupportable and Aetna is entitled to summary judgment upon Veneziano's ADA claim because under [the] undisputed facts, Aetna is not subject to the ADA's anti-retaliation provision." Tr. 47:25 to 48:3.

Plaintiff's counsel had ample notice prior to the filing of the Complaint on June 15, 1999 that Aetna was not Veneziano's "employer" within the meaning of the ADA. In fact, an EEOC representative spoke with Ms. Andreacchio on January 4, 1999 about dismissing the charge filed against Aetna. *See* Aff. of Tarleton David Williams, 7/30/02, Ex. C (EEOC Case Log, Charge

No. 170981532). The EEOC investigator explained that because the Respondent, Long Island Pipe, had a group policy, Long Island Pipe was responsible for informing Veneziano about his COBRA benefits. *See id.* In correspondence dated January 4, 1999, Tarleton David Williams, Esq., counsel for Aetna, also explained that Aetna was not Veneziano's employer. *See* Def. Aetna's Exs. to Mot. for Att'y's Fees and Costs, Ex. I.[2] The record in this case is devoid of any evidence of Long Island Pipe's control over Aetna, but this did not prevent Ms. Andreacchio from continuing to litigate the ADA claim against Aetna when it was clear that there was absolutely no evidentiary or legal support for such a claim. *Christiansburg* was intended to curb the filing of such baseless claims and is properly invoked in this case. Thus, I find that Veneziano's "agency argument" against Aetna indeed reached a compensable level of frivolousness and unreasonableness under *Christiansburg.*

■ I further conclude that Veneziano's LAD claim was brought in bad faith within the meaning of the LAD, which provides that "no attorney's fee shall be awarded to the respondent unless there is a determination that the complainant brought the charge in bad faith." N.J.S.A. § 10:5–27.1 (West 2002). The LAD expressly carves out an exception stating that the statute does not apply to any *bona fide* insurance plan:

> Nothing in this act ... shall be construed ... to interfere with the operation of the terms or conditions and administration of *any bona fide* retirement, pension, employee benefit or *insurance plan or program.*

N.J.S.A. § 10:5–2.1 (West 2002) (emphasis added); *see also Yourman v. People's Sec.*

*Life Ins. Co.,* 992 F.Supp. 696, 703–704 (D.N.J.1998) (finding "no indication from the New Jersey state legislature or state supreme court" that the LAD should apply to *bona fide* insurance plans); *Merritt v. Med. Disability Ins. Plan,* Civ. A. No. 96–4495(SMO), 1998 WL 1110694, at *7 (Orlofsky, J.); *Rutgers Council of AAUP Chs. v. Rutgers, State Univ.,* 298 N.J.Super. 442, 450–51, 689 A.2d 828, 832 (App.Div. 1997) (LAD's exception for benefit and insurance plans is "unambiguous"). The text of the statute, which excludes *bona fide* insurance plans from the application of the LAD, is not particularly difficult to understand, or at least should be comprehensible to an attorney of Ms. Andreacchio's experience. Moreover, the cases cited above are very clear in explaining that the LAD does not apply to *bona fide* insurance plans.

I conclude that Veneziano's LAD claim against Aetna indeed constituted bad faith, and was "frivolous, meritless and vexatious." *See* N.J.S.A. § 10:5–27.1; *Baliko v. Int'l Union of Operating Eng'rs, Local 825,* 322 N.J.Super. 261, 282, 730 A.2d 895, 907 (App.Div.1999). At oral argument on March 19, 2001, Ms. Andreacchio made what can be described, at best, as a misguided effort to argue that Aetna is not a *bona fide* insurance plan:

> THE COURT: Why aren't they bona fide, I don't understand what you are saying?
>
> MS. ANDREACCHIO: I believe that they're not bona fide because their actions are in conflict with state law.
>
> THE COURT: Well, you may disagree with them about what they've done, but that doesn't render them a non-bona fide insurance plan.

---

2. Counsel for Aetna even portended that it would "seek available remedies for damages, fees and costs incurred in defending frivolous claims." *See* Def. Aetna's Exs. to Mot. for Att'y's Fees and Costs, Ex. I, at 2.

MS. ANDREACCHIO: Well, I think it's how we define bona fide in this case, what definition of bona fide is going to be adopted here. Tr. of 3/19/01 H'rg, 23:17 to 24:1. "Bona fide" is defined as "actually, without simulation or pretense" and "real, actual, genuine, and not feigned." Black's Law Dictionary 177 (6th ed.1990). Ms. Andreacchio presented absolutely no evidence to cast into doubt the *bona fide* status of Aetna, a well-known national insurance company. As is apparent from the above colloquy with the Court, Ms. Andreacchio's arguments were bereft of legal and factual support.

The United States Court of Appeals for the Third Circuit construed the plain meaning of "frivolous" in *Deutsch v. United States*, 67 F.3d 1080 (3d Cir.1995).[3] "Frivolous" means "of little or no weight, value or importance; paltry; trumpery; not worthy of serious attention; having no reasonable ground or purpose." *Id.* at 1085–86. This definition certainly applies to claims that, like Veneziano's LAD claim, are explicitly barred by the controlling law.

Veneziano's LAD claim is also frivolous under the factors articulated in *L.B. Foster*, 123 F.3d at 751. First, Plaintiff did not establish a *prima facie* case under the LAD. Second, Ms. Andreacchio failed to make a reasonable or realistic demand with respect to settlement. Indeed, she sought $1,500,000 for a claim that was ultimately disposed of on summary judgment. *See* Aff. of Edward S. Wardell, 7/31/02, ¶ 8.[4] Third, summary judgment was granted in favor of Aetna on all claims that Veneziano brought against it. Furthermore, under the factors set forth in *Barnes Found.*, 242 F.3d at 158, the LAD issue was not one of first impression, but one already clearly decided by at least three courts, including this one. *See Yourman, Merritt,* and *Rutgers Council, supra.* Moreover, Veneziano did not face any real threat of injury from Aetna because, prior to the filing of the Complaint, all of his medical expenses had already been reimbursed. *See* Opinion, *Veneziano v. Long Island Pipe Fabrication Co.,* Civ. A. No. 99–2753(SMO) (D.N.J. April 10, 2002), ¶ 12.

Under the LAD, fee-shifting in favor of a defendant requires a finding not only of frivolousness, but of bad faith. *See* N.J.S.A. § 10:5–27.1; *Brown v. Fairleigh Dickinson Univ.,* 560 F.Supp. 391, 406 (D.N.J.1983). I conclude that Veneziano's LAD claim was indeed brought in bad faith. Prior to the filing of this action on June 15, 1999, the relief that Veneziano sought from Aetna, reinstatement of his insurance benefits, had already been granted. As explained in correspondence dated January 28, 1999 from Aetna's Counsel, Mr. Williams, to Ms. Andreacchio, Aetna had already by that date reinstated Veneziano's coverage in full. *See*

---

3. *Deutsch v. United States,* 67 F.3d 1080 (3d Cir.1995) discussed the meaning of "frivolous" within the context of the *in forma pauperis* statute, 28 U.S.C. § 1915. *Id.* at 1084.

4. Ms. Andreacchio states in her opposition papers that she never made a specific monetary settlement demand, and that "[t]he only demand that Plaintiff made to Defendant Aetna was that Aetna not terminate Plaintiff's coverage without prior notice to him in accordance with state law." Aff. of Diana Andreacchio, 9/19/02, ¶ 3. Aetna, allegedly due to a computer error, temporarily terminated Veneziano's coverage on January 6, 1999, but reinstated his coverage retroactively on January 11, 1999 so that no gap in coverage ever existed. *See* Tr. 46:4–11. The fact that Ms. Andreacchio never made a specific settlement demand, even if true, does not strengthen her argument under *L.B. Foster,* 123 F.3d at 751, because it demonstrates a halfhearted attempt at negotiating a settlement.

App. to Aetna's Mot. for Summ. J., Ex. O.[5]

"Bad faith" is "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." Black's Law Dictionary 139 (6th ed.1990). Such affirmative wrongdoing existed in this case. Veneziano's LAD claim against Aetna was expressly barred by the controlling law and unsupported by any facts. Still, Andreacchio pursued the claim, which unnecessarily and vexatiously multiplied the proceedings before this Court.

■ Ordinarily, federal courts apply the American rule and require each party to pay for the services of his or her attorney from his or her own pocket. *See Solomen v. Redwood Advisory Co.*, 223 F.Supp.2d 681, 682 (E.D.Pa. Sept.24, 2002) (citations omitted). Under 28 U.S.C. § 1927, however, instead of the client, an *attorney* may be held personally liable for excessive costs and fees.

Veneziano, who suffers from a terminal illness, is not able to pay an award of attorneys' fees. It is clear that throughout the course of this litigation Veneziano completely relied on the advice of his attorney, Ms. Andreacchio, whose advice turned out to be wanting. Thus, for bringing meritless claims against Aetna under the ADA and the LAD, Ms. Andreacchio [6] shall be ordered to compensate Aetna personally for its reasonable counsel fees and costs incurred in defending those two claims.

### 2. Plaintiff's Claims Against Defendants Long Island Pipe and Moss

■ Unlike the LAD claim brought against Aetna, Veneziano's claims against Long Island Pipe and Moss were not "frivolous, unreasonable, or without foundation" under *Christiansburg*, 434 U.S. at 421, 98 S.Ct. 694. During the hearing held on March 19, 2001, this Court concluded that Veneziano did not establish, against either Long Island Pipe or Moss, a *prima facie* case of: discrimination under the "ADA and/or LAD," Tr. at 34:18–21; retaliation under the ADA or LAD, *see id.* at 37:10–13; or intentional infliction of emotional distress ("IIED"), *see id.* at 40:5–8. I shall again apply the three factors presented in *L.B. Foster*, 123 F.3d at 751.

First, Plaintiff did not make out a *prima facie* case on his ADA, LAD, or IIED claims against Long Island Pipe and Moss—summary judgment in favor of Long Island Pipe and Moss was granted on all but Veneziano's ERISA claim. Second, Ms. Andreacchio demanded over one million dollars to settle the case, which, once again, was neither a reasonable, nor a realistic demand. *See* Affirmation of Def.'s Counsel in Supp. of Long Island Pipe and Moss' Application for Allowance of Counsel Fees and Expenses, 7/8/02, ¶ 4. As to the third factor, I did not dismiss the case prior to trial. Indeed, the ERISA claim against Long Island Pipe proceeded to a bench trial held on February 4, 2002,

---

5. The moving force behind Veneziano's claims against Aetna was clearly Ms. Andreacchio. At some point throughout the course of their dealings, the relationship between Ms. Andreacchio and Mr. Williams soured. As Judge Rosen presciently observed in his February 4, 2000 Order, "[C]ounsel for both parties appear to have embarked on a path of mis-communication, which path leads only to further litigation difficulties." *Veneziano v. Long Island Pipe Fabrication Co.*, Civ. A. No. 99–2753(SMO)(JBR) (D.N.J. Feb. 4, 2002). A personal vendetta, however, cannot serve as the basis for advancing unsupportable claims.

6. *See* Section C, *infra*, for the discussion of Ms. Andreacchio's personal liability for fees and costs under 28 U.S.C. § 1927.

and Veneziano was partially successful on his ERISA claim.

Veneziano brought valid claims against Long Island Pipe under the ADA and LAD, even though they were not supported by sufficient evidence to withstand Long Island Pipe's motion for summary judgment. Veneziano's arguments against Long Island Pipe and Moss were weak with little chance of success, rather than frivolous with no chance of success. *See Khan, supra,* 180 F.3d at 837. As I explained during the March 19, 2001 hearing, the Third Circuit has addressed the effect of inconsistent statements made on applications for Social Security disability benefits in comparison with claims alleged in an ADA action. *See* Tr. 32:4 to 33:7 (citing *Motley v. New Jersey State Police,* 196 F.3d 160 (3d Cir.1999); *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999)). Even though Veneziano represented in his application for Social Security benefits that he was physically incapable of lifting heavy objects, an essential function of his job at Long Island Pipe, this did not absolutely foreclose him from making an ADA or LAD claim under *Cleveland,* 526 U.S. at 807, 119 S.Ct. 1597 ("when faced with a plaintiff's previous sworn statement asserting total disability or the like, the Court should require an explanation of apparent inconsistency with the necessary elements of an ADA claim."). *See* Tr. 32:4 to 33:7. Likewise, Veneziano's IIED claim, also defeated by Long Island Pipe's motion for summary judgment, was not totally without merit because Veneziano did "cite to some evidence that may support his claim

that he suffered severe emotional distress." Tr. 39:12–13.

In light of these findings, I conclude that the attorneys' fees incurred by Long Island Pipe and Moss in defending against Veneziano's claims are not compensable under *Christiansburg.*

## C. ANDREACCHIO'S PERSONAL LIABILITY FOR FEES AND COSTS UNDER 28 U.S.C. § 1927

Aetna argues that it is entitled to an award of fees and costs pursuant to 28 U.S.C. § 1927 because Ms. Andreacchio acted in bad faith.[7] *See* Aetna's Reply Mem. in Supp. of Att'y Fees, at 8. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to *satisfy personally* the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.* (West 2002) (emphasis added). The statute applies to those situations where an attorney has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct. *See LaSalle Nat. Bank v. First Conn. Holding Group, LLC,* 287 F.3d 279, 288 (3d Cir.2002). Before awarding fees under Section 1927, a Court must find willful bad faith on the part of the offending attorney. *See Murphy,* 158 F.Supp.2d at 446 (citing *Baker Indus., Inc. v. Cerberus Ltd.,* 764 F.2d 204, 208 (3d

---

**7.** The Third Circuit has held that due process requires that "[p]rior to sanctioning an attorney, a court must provide the party to be sanctioned with notice and some opportunity to respond to the charges." *Jones v. Pittsburgh Nat. Corp.,* 899 F.2d 1350, 1357 (3d Cir.1990). Here, Ms. Andreacchio had adequate notice of a possible sanction under 28 U.S.C. § 1927 and argued against the imposition of any sanction in her response brief. *See* Pl.'s Answer in Oppos. to Aetna's Mot. for Fees and Costs, at 6–15.

Cir.1985)). Indications of bad faith include findings that the claims advanced were meritless, that counsel knew or should have known that they were without merit, and that the motive for filing the suit was for an improper purpose such as harassment. *See In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,* 278 F.3d 175, 188 (3d Cir.2002) (citations and quotations omitted).

As I have already explained at length, *see supra,* Section B(1), Veneziano's ADA and LAD claims against Aetna were meritless. *Cf. Murphy,* 158 F.Supp.2d at 450 (imposing sanction under Section 1927 for meritless claims under Title VII and LAD). In addition, because the relief that Veneziano sought from Aetna had already been granted prior to the commencement of this action, I can only conclude that Ms. Andreacchio brought the claims against Aetna in order to harass Mr. Williams, with whom she had been in conflict prior to this action, when Veneziano pursued his claims before the Equal Employment Opportunity Commission.

There is no doubt that Ms. Andreacchio's performance in this litigation fell below the standard of competence of the members of the Bar of this Court and the legal community. After Magistrate Judge Joel B. Rosen found Ms. Andreacchio's initial discovery requests to be "grossly over broad," Order, *Veneziano v. Long Island Pipe Fabrication Co.,* Civ. A. No. 99–2753(SMO)(JBR) (D.N.J. Feb. 4, 2000), at 2, Ms. Andreacchio unsuccessfully and frivolously appealed Judge Rosen's Order to this Court, rather than narrow the scope of her interrogatories as recommended by Judge Rosen. Ms. Andreacchio also accused Mr. Williams of threatening and intimidating her. *See* Aetna's Supp'l Mem. and Aff. of T. David Williams in Supp. of Mot. for Att'y's Fees, at 2. This serious allegation was utterly unsupported by the voluminous record in this case. Moreover, Ms. Andreacchio filed at least one premature Notice of Appeal, ultimately dismissed by the Third Circuit for lack of jurisdiction. *See* Order, *Veneziano v. Long Island Pipe Fabrication & Supply,* No. 01–1977 (3d Cir. Aug. 21, 2001). In light of the utter lack of factual or legal support for the claims Ms. Andreacchio filed and continued to prosecute against Aetna, I conclude that Ms. Andreacchio's conduct in pressing these claims demonstrated willful bad faith.

Section 1927 is reserved for behavior of an egregious nature that is violative of recognized standards in the conduct of litigation. *See In re Prudential,* 278 F.3d at 189–90. Like the *Christiansburg* standard governing the shifting of attorneys' fees in favor of prevailing defendants, sanctions under Section 1927 are sparingly granted, to avoid chilling an attorney's obligation to represent her client zealously. *See LaSalle,* 287 F.3d at 289. Here, Ms. Andreacchio strayed far beyond mere "misunderstanding, bad judgment, or well-intentioned zeal," *id.,* and her actions fall within the scope of Section 1927. Accordingly, I shall order Ms. Andreacchio to personally compensate Aetna for its reasonable attorneys' fees and costs incurred in defending the ADA and LAD claims.

I decline to consider the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure because the Defendants have not submitted a properly supported Rule 11 motion, *see* Fed. R.Civ.P. 11(b)(1)(A), nor has the Court issued an order to show cause pursuant to Fed.R.Civ.P. 11(b)(1)(B).

### D. COMPUTATION OF THE AWARD OF FEES AND COSTS TO AETNA

As discussed above, Ms. Andreacchio shall be ordered to pay Aetna its reasonable attorneys' fees and costs. In calculat-

ing the amount of fees and costs to be awarded, courts employ the "lodestar" formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir.2001). An attorney must demonstrate that "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also Maldonado,* 256 F.3d at 184.

The court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Maldonado,* 256 F.3d at 184 (quotations and citation omitted). However, in calculating the hours reasonably expended, a court should review the time charged and decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary. *Id.* at 184 (citing *Pub. Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1188 (3d Cir.1995)); *see also Murphy,* 158 F.Supp.2d at 452. Although not dispositive, the starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate. *See Maldonado,* 256 F.3d at 183–85.

Counsel for Aetna has submitted numerous copies of invoices for legal services with the Affidavit of Tarleton David Williams, Jr., filed on July 30, 2002. This, however, is insufficient and in violation of the Local Civil Rules of this Court. In accordance with Local Civil Rule 54.2, I shall order Aetna's counsel to submit an affidavit setting forth the following:

(1) the nature of the services rendered . . .;

(2) a record of the date of services rendered;

(3) a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;

(4) the time spent in the rendering of each of such services; and

(5) the normal billing rate for each of said persons for the type of work performed.

Local Civ. R. 54.2 (Gann 2002). The information set forth in the affidavit, to be submitted within thirty days from the date of this Opinion and accompanying Order, *see* Local Civ. R. 54.2(a) (Gann 2002), should reflect all attorneys' fees incurred by Aetna in defending against the ADA and LAD claims. To the extent the affidavit leaves any doubt as to the amount of fees to be awarded, these doubts shall be resolved against an award of fees. This is because the party seeking to recover attorneys' fees bears the burden of establishing its right to them. *See Maldonado,* 256 F.3d at 184.

**E. MOTION FOR STAY OF EN-FORCEMENT OF JUDGMENT**

Defendants Long Island Pipe and Moss have also filed a "Notice of Motion for Stay of Entry and/or Enforcement of Judgment Pending Determination of Defendant's Application for Costs and Attorney's Fees and Expenses." In light of this Order deciding the Defendants' applications for attorneys' fees, the motion to stay judgment shall be denied as moot.

## IV.  CONCLUSION

For the reasons stated above, Long Island Pipe and Moss's motion for attorneys' fees and costs shall be denied.  Aetna's motion for attorneys' fees and costs shall be granted.  Ms. Andreacchio, Veneziano's counsel, shall personally compensate Aetna for its reasonable attorneys' fees and costs incurred in defending against Plaintiff's claims under the ADA and LAD. Finally, counsel for Aetna shall submit an Affidavit pursuant to Local Civil Rule 54.2 within thirty days of this Opinion and accompanying Order.  This Affidavit shall be limited to information relating to Aetna's defense of the ADA and LAD claims.