940 A.2d 310

ALICE MICHAEL, PLAINTIFF–APPELLANT, v. ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL AND MICHAEL ZEGAR, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 24, 2007—Decided January 15, 2008.

160

Before Judges WEFING, PARKER and R.B. COLEMAN.

*Frank A. Tobias,* attorney for appellant (*Martin M. Barry,* on the brief).

*Bressler, Amery & Ross,* attorneys for respondent (*Jed L. Marcus and Risa M. David,* on the brief).

The opinion of the court was delivered by

WEFING, P.J.A.D.

Plaintiff appeals from a trial court order awarding defendant $129,692.79 in counsel fees and costs. After reviewing the record in light of the contentions asserted on appeal, we reverse and remand for further proceedings.

Plaintiff is a part-time employee of defendant Robert Wood Johnson Hospital, and she has worked in that capacity for more than twenty years. In 2002 she filed suit against the Hospital and one of her superiors, alleging that she had been the victim of age

discrimination and a hostile work environment. She also asserted claims of negligence, breach of contract, and retaliation. Litigation of plaintiff's claims did not proceed smoothly, and defendants' counsel was, on several occasions, awarded counsel fees because of plaintiff's derelictions in discovery. The trial court eventually granted summary judgment, dismissing all of plaintiff's claims. Plaintiff appealed, and we affirmed. *Michael v. Robert Wood Johnson Hospital,* No. A-0633-04, 2006 *WL* 1133288 (App.Div. May 1, 2006).

In the course of our opinion we noted that plaintiff's claims of age discrimination and hostile work environment revolved around three discrete areas: the Hospital's vacation policy, its policy on tuition reimbursement, and her performance evaluations. With respect to our affirmance with regard to the Hospital's vacation policy, we stated the following:

> Plaintiff admitted in her deposition that the vacation policy was uniformly applied to all members of the department, not just to herself. She also testified that she thought she was entitled to special consideration in arranging her vacation because of her practice of booking so far ahead. In response to the question, "Did you believe that you were entitled to special consideration?" she responded, "Yes." She also agreed in her deposition that the revised vacation policy applied to all members of the department, several of whom were older than plaintiff and that she had no evidence that the policy had been instituted to "get" her.

[slip op. at 4, 2006 *WL* 1133288.]

In connection with plaintiff's claims relating to the Hospital's tuition reimbursement policy, we noted that plaintiff had, over the course of her employment, been reimbursed for tuition for more than thirty courses she had taken. Her claims in this litigation revolved around two courses for which plaintiff's request for reimbursement were initially unsuccessful. In our opinion affirming the trial court's grant of summary judgment with respect to plaintiff's claim of age discrimination in connection with tuition reimbursement, we noted that plaintiff was unable to establish that a younger employee received reimbursement that had been denied to plaintiff and that plaintiff eventually received full reimbursement for the courses she wished to take.

Plaintiff's claims with respect to her performance evaluations revolved around a change both in her job description and the evaluation form itself. Plaintiff complained that the revised form included job functions she did not perform; she received a perfect score for those functions she did perform and an average score for those she did not. She complained this was unfair to her and that two younger workers received perfect evaluations on job functions their positions did not encompass. In discussing this claim, we stated:

... Plaintiff had no proof to support that assertion [i.e., with respect to the two younger workers]; she had never seen the job evaluations of those individuals nor had she seen their job descriptions. And ... plaintiff had never had the opportunity to observe their performance at work.

Plaintiff has not suffered any adverse consequences as a result of the change in evaluation procedures or the grievances she has filed. She has received every scheduled raise and has lost no opportunities for advancement. She has never been suspended or received any disciplinary action throughout her entire employment with the Hospital.

[slip op. at 9, 2006 *WL* 1133288.]

Following our affirmance of the trial court's order granting summary judgment, defendants promptly moved for counsel fees and costs. In their moving papers, they relied both upon the frivolous claims statute, *N.J.S.A.* 2A:15–59.1, and upon the Law Against Discrimination, specifically, *N.J.S.A.* 10:5–27.1, which provides in pertinent part:

In any action or proceeding brought under this act, the prevailing party may be awarded a reasonable attorney's fee as part of the cost, provided however, that no attorney's fee shall be awarded to the respondent unless there is a determination that the complainant brought the charge in bad faith.

Although defendants in their moving papers had relied upon the frivolous claims statute to seek counsel fees and costs, defendants' attorney, at the outset of the oral argument on the motion, specifically withdrew that aspect of the application and advised the court that defendants were proceeding solely under *N.J.S.A.* 10:5–27.1. The trial court, in its letter opinion, proceeded, nonetheless, to analyze defendants' application both in terms of *N.J.S.A.* 2A:15–59.1 and *N.J.S.A.* 10:5–27.1 and held defendants were entitled to an award of counsel fees under both statutes.

Plaintiff makes two arguments on appeal: that the trial court erred in awarding a counsel fee under *N.J.S.A.* 2A:15–59.1 and further erred in awarding a counsel fee under *N.J.S.A.* 10:5–27.1. To the extent that the counsel fee awarded was based upon *N.J.S.A.* 2A:15–59.1, we are constrained to agree. Defendants clearly advised the trial court that they were no longer seeking fees under that statute. Defendants having abandoned that claim, there was no basis for the trial court to sua sponte resuscitate it.

In the course of its letter opinion, the trial court cited three factors to support its conclusion that plaintiff had brought her LAD action in bad faith: that she had failed to establish a prima facie case under the LAD, that her case was dismissed prior to trial, and that she had received from the defendants the relief she requested before she filed suit. The trial court then concluded that both the hours spent by defendants' attorneys in defending this matter and rates they charged were reasonable, and it proceeded to assess that full amount against plaintiff.

There is little reported authority on the issue of awarding counsel fees to a respondent under *N.J.S.A.* 10:5–27.1. The statute itself provides that such fees cannot be awarded unless there is a determination that the "complainant brought the charge in bad faith." The trial court cited *Veneziano v. Long Island Pipe Fabrication,* 238 *F.Supp.*2d 683 (D.N.J.2002), as precedent for its decision. Plaintiff in that case filed a six-count complaint in which he sought damages from Long Island Pipe under the federal Americans with Disabilities Act ("ADA"), under New Jersey's LAD, for intentional infliction of emotional distress, and for violations of the Employee Retirement Security Act. 238 *F.Supp.*2d at 685–86. He also sought damages from Aetna Insurance Company for discrimination under the LAD and for violations of the ADA. *Id.* Defendants ultimately prevailed on all counts and sought counsel fees. *Id.* at 687. The trial court awarded counsel fees in favor of defendant Aetna only, premising its award both on the ADA and on the LAD. *Id.* at 692. In discussing the issue of bad

faith for purposes of the LAD, the *Veneziano* court defined bad faith in the following manner:

> "Bad faith" is "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."
>
> [238 *F.Supp.*2d at 692 (quoting *Black's Law Dictionary* (6th ed.1990)).]

The *Veneziano* court found plaintiff had proceeded in bad faith, in light of the fact that plaintiff's "LAD claim against Aetna was expressly barred by the controlling law and unsupported by any facts." *Id.* at 692. It then proceeded to award counsel fees in favor of defendant Aetna. *Id.* In our judgment, *Veneziano* does not support the trial court's order in this matter.

In determining whether a prevailing defendant is entitled to an award of counsel fees under *N.J.S.A.* 10:5–27.1, a trial judge must engage in a multi-step analysis. The first issue to be determined is whether the court is satisfied that the unsuccessful plaintiff proceeded in bad faith. We do not entirely subscribe to the formulation of bad faith employed by the court in *Veneziano* and adopted here by the trial court.

Our Supreme Court has not had the occasion to address the meaning of "bad faith" for purposes of *N.J.S.A.* 10:5–27.1. We are of the view that the meaning and application of the term "bad faith" must be determined within the context of the particular matter being considered. We consider it significant that *N.J.S.A.* 10:5–27.1 does not include within its reference to bad faith the further limitation that is contained within the reference to bad faith in the frivolous claims statute, that the action was commenced or continued "solely for the purpose of harassment, delay or malicious injury." The *Veneziano* formulation of bad faith, adopted by the trial court, appears to adopt this concept of purposeful wrongdoing.

The Supreme Court, admittedly in another context, equated bad faith with "a reckless disregard or purposeful obliviousness of the known facts." *New Jersey Title Ins. Co. v. Caputo,* 163 *N.J.* 143, 155, 748 *A.*2d 507 (2000). In our judgment, the *Caputo* formula-

tion more fully achieves the legislative objective of "eliminat[ing] the possible chilling effect on civil rights plaintiffs, who may decide not to pursue a meritorious suit for fear of suffering a fee award, and the goal of deterring plaintiffs from filing frivolous claims." *Veneziano, supra,* 238 *F.Supp.*2d at 689 (internal quotation omitted).

Here, the trial court erroneously transported into its analysis of bad faith under LAD concepts more properly employed in analyzing whether a claim may be denominated frivolous under *N.J.S.A.* 2A:15–59.1.

In addition, we do not entirely subscribe to the three-prong test employed by the trial court to determine whether plaintiff acted in bad faith in pursuing this matter. That a party may ultimately not be able to marshal sufficient proof to proceed to trial does not lead inexorably to a finding of bad faith. *Mandel v. UBS/PaineWebber,* 373 *N.J.Super.* 55, 83–84, 860 *A.*2d 945 (App.Div.2004). That a claim may turn out in the end to be groundless is not the necessary equivalent to it having been commenced in bad faith. *Brown v. Fairleigh Dickinson University,* 560 *F.Supp.* 391, 406 (D.N.J.1983); *Mandel, supra,* 373 *N.J.Super.* at 84, 860 *A.*2d 945 (trial court properly exercised its discretion in not assessing counsel fees against plaintiffs who had no more than office gossip and speculation to support their claim). "Attorney's fees will rarely be awarded where the district court grants the defendants' motion for summary judgment because of the absence of legally sufficient evidence." *Veneziano, supra,* 238 *F.Supp.*2d at 689 (quoting *Batteast Const. Co. v. Henry County Bd. of Comm'rs,* 202 *F.Supp.*2d 864, 867 (S.D.Ind.2002)). We agree, however, that a trial court may appropriately consider whether a plaintiff had already achieved full satisfaction of all her claims before suit was instituted.

There is an additional aspect in which *Veneziano* does not support the order entered by the trial court. The court in *Veneziano* did not assess fees against the unsuccessful plaintiff, who was noted to be terminally ill and unable to pay any award,

but against his attorney upon whose advice the plaintiff had relied completely throughout the litigation. 238 *F.Supp.*2d at 692.

Our Supreme Court has not addressed the question whether the financial ability of a non-prevailing party should be taken into account when a trial court is presented with an application for counsel fees under *N.J.S.A.* 10:5–27.1. The Court of Appeals for the Third Circuit has indicated that fee applications under this statute should be determined without regard to the ability of the losing party to pay. *Failla v. City of Passaic,* 146 *F.*3d 149, 160–61 (3d Cir.1998). That statement, however, was made in the context of an application to assess counsel fees against a public entity determined to have violated the LAD. We do not think that such judicial blindness when confronted with an application for counsel fees against an unsuccessful plaintiff would accord with New Jersey public policy since it could have the effect of deterring a fearful plaintiff from presenting a valid claim.

The statute refers to an award of a "reasonable" attorney's fee; it does not direct that the prevailing party is to be made whole for the sums it expended in retaining counsel to defend itself. In our judgment, the ability of a party to pay an award of counsel fees is inherent in the concept of analyzing what is a reasonable fee. *Brown v. Fairleigh Dickinson University, supra,* at 414 (downward adjustment of counsel fee assessed against plaintiff who unsuccessfully asserted federal civil rights claims not necessary when evidence showed the plaintiff to be a man of means).

Because the trial court did not make the requisite finding that plaintiff proceeded in bad faith in this litigation, we reverse the award of counsel fees and remand the matter to the trial court. If the trial court concludes that the matter, although lacking merit, was not brought in bad faith, defendants would not be entitled to counsel fees. If the trial court determines that the matter was brought in bad faith, it should then proceed to consider what would constitute a reasonable award of counsel fees. In settling upon what it considers a reasonable award, the trial

court should take into account the extent to which plaintiff has the ability to pay an award of counsel fees, and also the extent to which plaintiff pursued the matter because of her own views or desires or relied, either exclusively or partially, upon the advice of counsel.

Reversed and remanded.   We do not retain jurisdiction.